Thomas E. MARONEY and Larry E. Parker
*v.* CITY of MALVERN and AS&GC, Inc.

94-1143                                   899 S.W.2d 476

Supreme Court of Arkansas
Opinion delivered June 5, 1995

*Baxter, Wallace, Jensen & McCallister*, by: *Ray Baxter* and *Karen Virginia Wallace*, for appellants.

*Glover, Glover & Roberts*, by: *David M. Glover* and *Mark Roberts*, for appellees.

ROBERT H. DUDLEY, Justice. Appellants Maroney and Parker own a forty-acre tract of land that lies east of, and abuts, the Southgate subdivision in Malvern. Appellants' forty-acre tract is outside the city limits, while the Southgate subdivision is inside the City. Appellants contended below that they were entitled to an injunction allowing them to use a road in the Southgate subdivision to get to their forty-acre tract. The chancellor dismissed appellants' complaint. We affirm.

.In 1968, James L. Scott developed the Southgate subdivision with the approval of the Malvern Planning Commission. Subsequently, in 1970, Scott developed an addition to Southgate with similar approval. On both occasions the city planning commission authorized Scott to retain ownership of a reserve strip at the end of Southgate Drive. The end of Southgate Drive is at the city limit and abuts appellant's tract. The reserve strip is two feet wide and crosses the entire fifty feet of the street right of way.

Years ago, before appellants purchased the forty-acre tract and before Southgate subdivision was developed, appellant Thomas E. Maroney used an unimproved road to get to appellants' forty-acre tract to cut firewood. That unimproved road was located where Southgate Drive is now located. In July or August 1991, appellants started construction of a road on their forty acres. The road is apparently located in the same place as the old unimproved road. Appellants intended for the improved road to connect with Southgate Drive, so that the completed road would extend from inside the City to their forty-acre tract. They could then sell their forty acres as residential lots located just outside the City. However, shortly after appellants improved the road on their land, the City placed a locked gate on the reserve strip at the end of Southgate Drive. The result was that appellants' improved road stopped at the city limits.

Appellants filed this chancery court action seeking an injunction to prevent the City and James L. Scott, the alleged owner of the reserve strip, from maintaining the gate and from blocking the road. Appellants pleaded that the forty-acre tract was "serviced by a public road known as Southgate Drive," that it was the only access to their property, and that by erecting the gate the City

had violated its own ordinance which provides, "There shall be no reserve strips controlling access to land dedicated or intended to be dedicated to public use." The City, in effect, filed a general denial. Scott filed a motion to dismiss for failure to state a cause of action, A.R.C.P. Rule 12(b)(6), and additionally pleaded that he had sold the reserve strip to AS&GC, Inc. Subsequently, the complaint against Scott was dismissed with prejudice. The dismissal with prejudice was apparently because Scott had sold the reserve strip to AS&GC, Inc. and not for failure to state a cause of action.

AS&GC, Inc. was allowed to intervene and claim ownership of the reserve strip. It denied that Southgate drive was appellants' only means of access to their forty acres. It additionally pleaded that it was the owner of the reserve strip and asked that appellants be restrained from trespassing on the strip.

Subsequently, AS&GC pleaded that it had mistakenly alleged ownership of the reserve strip and that it was in fact owned by Scott. Scott moved to set aside the order dismissing with prejudice the complaint against him. The motion was denied. Thus, Scott was not a party to this lawsuit when the final judgment was entered. The City of Malvern filed a counterclaim in which it asked that if appellants were allowed to cross the reserve strip, they be required to construct their road according to the City's master street plan.

The case proceeded to trial, and the trial court found:

(1) James L. Scott owns title to the reserve strip, and [appellants] should be enjoined from crossing the reserve strip.

(2) [Appellants] "contend they are landlocked," and county court has exclusive and original subject-matter jurisdiction of the cause of action.

Based upon the above findings, the chancellor entered an order enjoining appellants from crossing the reserve strip and dismissing appellants' complaint because of lack of jurisdiction.

On appeal, appellants first contend that the chancellor erred in ruling that Scott owned the reserve strip. Initially, we note that appellants' complaint did not seek to divest Scott

of ownership of the reserve strip; it only prayed for an injunction against the maintenance of the gate on the strip. Scott subsequently mistakenly pleaded that he had sold the strip to AS&GC, Inc. and soon thereafter sought to correct the mistake. The initial question then is whether such action constituted an abandonment of the reserve strip by Scott. We think not. Title to real estate is not lost by abandonment unless the abandonment is accompanied by circumstances of estoppel and limitation. *Helms* v. *Vaughn*, 250 Ark. 828, 407 S.W.2d 399 (1971); *Carmichael* v. *Arkansas Lumber Co.*, 105 Ark. 663, 152 S.W.2d 286 (1912). There were no circumstances between Scott and appellants that would give rise to estoppel or limitation. In addition, clear, unequivocal, and decisive evidence is required to establish abandonment of real property. *Hendrix* v. *Hendrix*, 256 Ark. 289, 506 S.W.2d 848 (1974). The decisive issue is not whether Scott owned the property because, regardless of whether the reserve strip was owned by Scott, AS&GC, Inc., or someone else, it was not owned by appellants, and they were not entitled to an injunction allowing them to cross someone else's property.

■ Appellants next contend that the City, by its code, was prohibited from allowing anyone to own the reserve strip. In 1968, Scott obtained approval of the original plat of the subdivision including the reserve strip. He obtained the approval of the addition in 1970. The city ordinance prohibiting reserve strips was not passed until 1973. Thus, Scott owned the reserve strip before such strips were prohibited. Even so, appellants ask us to retroactively apply the ordinance prohibiting reserve strips. We decline to so do. A statute or ordinance which interferes with antecedent rights will not be given retrospective application unless the ordinance expresses such intent in unequivocal and inflexible terms. *United States* v. *Security Industr. Bank*, 459 U.S. 70 (1982); *Gannett River States Publishing Co.* v. *Arkansas Industr. Dev. Comm'n*, 303 Ark. 684, 799 S.W.2d 543 (1990). Moreover, there is a real question about whether an ordinance could ever be applied retroactively so that it took away one's established property rights, but that is a question we need not answer here.

Appellants next argue that the chancellor erred in dismissing the case on the ground that county court had exclusive subject-matter jurisdiction of this case. The argument is valid, but it does not afford the appellants any relief.

■ Subject-matter jurisdiction is determined from the pleadings; the complaint, answer, or cross-complaint. *Union Pac. R.R. Co.* v. *State ex rel. Faulkner County*, 316 Ark. 609, 873 S.W.2d 805 (1994). Subject-matter jurisdiction "is tested on the pleadings and not the proof." *See e.g., Pryor* v. *Hot Spring County Chancery Court*, 303 Ark. 630, 633, 799 S.W.2d 524, 526 (1990). Subject-matter jurisdiction is given to a particular court by the Arkansas Constitution. *Hargis* v. *Hargis*, 292 Ark. 487, 731 S.W.2d 198 (1987). The chancery court had subject-matter jurisdiction of this case, and in fact, the chancellor exercised subject-matter jurisdiction when he heard the case and decided some of the issues.

■ Appellants did not file a complaint in which they asked the county court to exercise its power of eminent domain and to open a road for them at their expense. For a landlocked landowner to petition the county court to open a road, he must file a complaint in county court alleging that he has no reasonable means of gaining access to his land, plead that he has tried but is unable to unlock his land, ask the county to use its power of eminent domain to establish a road, ask the county judge to appoint viewers to determine the least inconvenient route to the other landowners, post bond with the county clerk sufficient to pay all damages to the landowner against whom the county will exercise the right of eminent domain, and deposit with the court clerk "all costs and expenses accruing on account of the petition, notice, view, and survey of the private road." Ark. Code Ann. §§ 27-66-401 to -403 (Repl. 1994). None of this was pleaded. Thus, the chancellor erred in ruling that subject-matter jurisdiction was exclusively in county court.

■■ However, the error does not afford appellants any relief. Equity cases are tried *de novo* on appeal, an appellate court resolves all of the issues of law and fact on the record made in the chancery court, and the fact that the chancellor based his decision upon an erroneous conclusion does not preclude an appellate court's reviewing the entire case *de novo* and entering such judgment as the chancery court should have entered on the undisputed facts in the record. *Ferguson* v. *Green*, 266 Ark. 556, 587 S.W.2d 18 (1979). Here, the record clearly shows that appellants' complaint sought an injunction against maintenance of the gate located on the reserve strip. Appellants did not plead, nor

did they prove, that they were entitled to an easement across the reserve strip. Thus, the chancellor correctly declined to issue the injunction against maintenance of the gate and correctly dismissed appellants' complaint, albeit for the wrong reason.

Affirmed.