Joe TERRY and David Lee Stocks *v.* A.D. LOCK,
Lock Hospitality, Inc., Greg Entler, John
Doe I, John Doe II, and John Doe III

00-818                                        37 S.W.3d 202

Supreme Court of Arkansas
Opinion delivered January 25, 2001

*McHenry & McHenry Law Firm,* by: *Donna McHenry, Robert McHenry, & Connie L. Grace,* for appellants.

*Grady & Adkisson, P.A.*, by: *William C. Adkisson*, for appellees.

RAY THORNTON, Justice. On February 1, 1999, appellants, Joe Terry and David Stocks, were preparing the Best Western motel in Conway for renovation. The motel was owned by appellee, Lock Hospitality Inc., a corporation wholly owned by appellee, A.D. Lock and his wife. The appellants were removing the ceiling tiles in room 118, with Mr. Lock also present in the room. As the ceiling tiles were removed, a cardboard box was noticed near the heating and air supply vent where it had been concealed. Appellant Terry climbed a ladder to reach the box, opened it, and handed it to appellant Stocks. The box was filled with old, dry and dusty currency in varying denominations. Mr. Lock took the box and its contents to his office. Later in the day, appellants contacted the Conway Police Department and informed them of the discovery. The investigating officer contacted Mr. Lock, and the money was counted. The face value of the currency was determined to be $38,310.00.

Appellants filed a complaint in Faulkner County Chancery Court, asserting that the currency "being old and fragile is unique and has numismatic or antique value and may have a market value in excess of the totality of its denominations as collector's funds." Appellants sought a temporary restraining order and an injunction, directing appellees to refrain from spending or otherwise depositing the found money and to pay all of the money to either appellants or into the registry of the court. Appellants' complaint also urged that under the "clean-up doctrine," the chancery court had authority to decide a number of charges sounding in tort. Appellants also sought an order finding that appellees were holding the money in trust for appellants.

On the day the complaint was filed, the chancery court entered a temporary restraining order requiring appellees to deposit the found money with the registry of the court. On February 9, 1999, Mr. Lock and Lock Hospitality, Inc., filed their answer. Appellees raised the defenses of estoppel, laches, failure of consideration, and fraud in their answer. Eventually, all of the named appellees other than Mr. Lock and Lock Hospitality, Inc., were dismissed from the case.

On appeal, appellants now contend that the chancery court did not have subject-matter jurisdiction to hear and resolve the issues that they had asked the chancellor to resolve. We find no

merit in this argument and conclude that the chancery court had jurisdiction under the clean-up doctrine to resolve the merits of the matters relating to ownership of the money.

The remaining issue for our review is whether the chancellor was clearly erroneous in characterizing the found money as "mislaid" property and consequently that the interest of Lock Hospitality, Inc., as the owner of the premises, is superior to the interest of appellants as finders of the money. We conclude that the chancellor was not clearly erroneous in finding that the money was mislaid property, and we affirm.

■ In their first point on appeal, appellants argue that the trial court was wholly without subject-matter jurisdiction to adjudicate the issues involved in this case. We have previously stated that parties may not consent to a court's subject-matter jurisdiction where no such jurisdiction lies, nor may the jurisdiction be waived. *Douthitt v. Douthitt*, 326 Ark. 372, 930 S.W.2d 371 (1996). A court must determine if it has subject-matter jurisdiction of the case before it. *Id.* Subject-matter jurisdiction is always open, cannot be waived, can be questioned for the first time on appeal, and can even be raised by this court. *Hamaker v. Strickland*, 340 Ark. 593, 99 S.W.3d 210 (2000). In fact, this court has a duty to determine whether or not we have jurisdiction of the subject matter of an appeal. *Id.* Subject-matter jurisdiction is determined from the pleadings, the complaint, answer, or cross-complaint. *Maroney v. City of Malvern*, 320 Ark. 671, 899 S.W.2d 476 (1995). Subject-matter jurisdiction is tested on the pleadings and not the proof. *Id.*

■■ A court of chancery or equity may obtain jurisdiction over matters not normally within its purview pursuant to the clean-up doctrine, our long-recognized rule that once a chancery court acquires jurisdiction for one purpose, it may decide all other issues. *Douthitt, supra.* Generally, the clean-up doctrine allows the chancery court, having acquired jurisdiction for equitable purposes, to retain all claims in an action and grant all the relief, legal or equitable, to which the parties in the lawsuit are entitled. *See Fulcher v. Dierks Lumber & Coal Co.*, 164 Ark. 261, 261 S.W. 645 (1924); *see also Bright v. Gass*, 38 Ark. App. 71, 831 S.W.2d 149 (1992).

In *Liles v. Liles*, 289 Ark. 159, 711 S.W.2d 447 (1986), we noted that:

> unless the chancery court has no tenable nexus whatever to the claim in question we will consider the matter of whether the claim should have been heard there to be one of propriety rather than one of subject-matter jurisdiction.

*Id.*

■ We have further noted that an error in bringing a suit in equity when there is an adequate remedy at law is waived by failure to move to transfer the cause to the circuit court; where the adequacy of the remedy at law is the only basis for questioning equity jurisdiction the chancellor's decree is not subject to reversal for failure to transfer the case, unless the chancery court is wholly incompetent to grant the relief sought. *Titan Oil & Gas, Inc. v. Shipley*, 257 Ark. 278, 517 S.W.2d 210 (1974). Some examples of courts granting relief which they were "wholly without jurisdiction" to grant would be a chancery court trying a criminal case or a chancery court hearing a probate matter. *See Dugal Logging. Inc. v. Arkansas Pulpwood Co.*, 66 Ark. App. 22, 988 S.W.2d 25 (1999).

■ We have also noted that when the issue is whether the chancery court has jurisdiction because the plaintiff lacks an adequate remedy at law, we will not allow it to be raised for the first time on appeal. *Liles, supra.* It is only when the court of equity is wholly incompetent to consider the matter before it that we will permit the issue of competency to be raised for the first time on appeal. Finally, we have held that it is a well-settled rule that one who has invoked the assistance of equity cannot later object to equity's jurisdiction unless the subject matter of the suit is wholly beyond equitable cognizance. *Leonards v. E.A. Martin Machinery Co.*, 321 Ark. 239, 900 S.W.2d 546 (1995).

Keeping in mind the foregoing applicable principles of law, we turn to the case now on review. In this case, appellants filed their complaint in Faulkner County Chancery Court. Looking at the pleadings filed in this case, we conclude that the chancery court properly had subject-matter jurisdiction to address the matter. The appellants' complaint sought the following equitable remedies: (1) an injunction; (2) specific performance; and (3) the imposition of a constructive trust. Additionally, appellants asserted in their complaint that they were seeking equitable relief. Specifically, their complaint states: "the cash money, referred to herein above, being old and fragile is unique and has numismatic or antique value and may have fair market value in excess of the totality of its denomina-

tions as collector's funds and therefore plaintiffs move for specific performance...[.]"

■ From the pleadings, it appears that appellants sought equitable remedies in the chancery court. As a result, when the chancery court addressed these remedies, that court then acquired jurisdiction over the remaining tort claims pursuant to the "clean-up doctrine." Accordingly, we hold that the trial court was not wholly without subject-matter jurisdiction over this case.

■ The argument that the court should have transferred the case to circuit court is one of propriety rather than one of subject-matter jurisdiction. Appellants did not request that their case be transferred to circuit court at the trial court level. Because this issue was not raised below we may not consider it now for the first time on appeal. *See, Titan Oil & Gas, supra; see also Liles, supra.* Accordingly, the trial court is affirmed.

In their second point on appeal, appellants contend that the trial court's finding that the property involved in this case was "mislaid" property was erroneous. Specifically, the trial court found "that the money in question was intentionally placed where it was found" and that when "money is mislaid, the finders would acquire no rights." The trial court then concluded that "Lock Hospitality, Inc., as the owner of the premises is entitled to possession." Appellants argue that the found property was not "mislaid property" but instead was "lost property," "abandoned property," or "treasure trove" and that the trial court's finding that the money was "mislaid property" is clearly erroneous. We disagree.

■ The standards governing our review of a chancery court decision are well established. We review chancery cases *de novo* on the record, and we do not reverse unless we determine that the chancery court's findings of fact were clearly erroneous. *Newberry v. Scruggs*, 336 Ark. 570, 986 S.W.2d 853 (1999).

■ We have not previously analyzed the various distinctions between different kinds of found property but those distinctions have been made in the common law, and have been analyzed in decisions from other jurisdictions. The Supreme Court of Iowa has explained that "under the common law, there are four categories of found property: (1) abandoned property, (2) lost property, (3) mislaid property, and (4) treasure trove." *Benjamin v. Linder Aviation, Inc.*, 534 N.W.2d 400 (Iowa 1995); *see also Jackson v. Steinberg*, 186

Or. 129, 200 P.2d 376 (1948). "The rights of a finder of property depend on how the found property is classified." *Benjamin, supra.* The character of the property should be determined by evaluating all the facts and circumstances present in the particular case. *See Schley v. Couch,* 284 S.W.2d 333 (Tex. 1955).

We next consider the classification of found property described in *Benjamin, supra.*

### A. Abandoned property

██ Property is said to be "abandoned" when it is thrown away, or its possession is voluntarily forsaken by the owner, in which case it will become the property of the first occupant; or when it is involuntarily lost or left without the hope and expectation of again acquiring it, and then it becomes the property of the finder, subject to the superior claim of the owner. *Eads v. Brazelton,* 22 Ark. 499 (1861); *see also Crosston v. Lion Oil & Refining Co.,* 169 Ark. 561, 275 S.W. 899 (1925).

### B. Lost property

██ "Lost property" is property which the owner has involuntarily parted with through neglect, carelessness, or inadvertence, that is, property which the owner has unwittingly suffered to pass out of his possession, and of whose whereabouts he has no knowledge. Property is deemed lost when it is unintentionally separated from the dominion of its owner. Popularly, property is lost when the owner does not know, and cannot ascertain, where it is, the essential test of lost property is whether the owner parted with the possession of the property intentionally, casually or involuntarily; only in the latter contingency may it be lost property. Property is not "lost" unless the owner parts with it involuntarily and unintentionally, and does not, at any time thereafter, know where to find it. A loss is always involuntary; there can be no intent to part with the ownership of lost property.

1 AM. JUR.2d *Abandoned, Lost, Etc., Property* § 4 (1994); *see also Benjamin, supra; Rizt v. Selma United Methodist Church,* 467 N.W.2d 266 (Iowa 1991); *Jackson, supra.*

██ The finder of lost property does not acquire absolute ownership, but acquires such property interest or right as will enable him to keep it against all the world but the rightful owner. This rule is not affected by the place of finding, as the finder of lost

property has a right to possession of the article superior to that of the owner or occupant of the premises where it is found.

1 AM. JUR.2d *Abandoned, Lost, Etc., Property* § 18 (1994); *see also Rizt, supra.*

## C. Mislaid property

■ "Mislaid property" is that which is intentionally put into a certain place and later forgotten. The place where money or property claimed as lost is found is an important factor in the determination of the question of whether it was lost or only mislaid. But where articles are accidentally dropped in any public place, public thoroughfare, or street, they are lost in the legal sense. In short, property will not be considered to have been lost unless the circumstances are such that, considering the place where, and the conditions under which, it is found, there is an inference that it was left there unintentionally.

1 AM. JUR.2d *Abandoned, Lost, Etc., Property* § 6 (1994); *see also Benjamin, supra; Ritz, supra; Jackson, supra.*

■ A finder of mislaid property acquires no ownership rights in it, and, where such property is found upon another's premises, he has no right to its possession, but is required to turn it over to the owner of the premises. This is true whether the finder is an employee or occupier of the premises on which the mislaid article is found or a customer of the owner or occupant.

■ ■ The right of possession, as against all except the true owner, is in the owner or occupant of the premises where the property is discovered, for mislaid property is presumed to have been left in the custody of the owner or occupier of the premises upon which it is found. The result is that the proprietor of the premises is entitled to retain possession of the thing, pending a search by him to discover the owner, or during such time as the owner may be considered to be engaged in trying to recover his property. When the owner of premises takes possession of mislaid personal property left by an invitee he becomes a gratuitous bailee by operation of law, with a duty to use ordinary care to return it to the owner.

The finder of mislaid property must turn it over to the owner or occupier of the premises where it is found; it is the latter's duty to keep mislaid property for the owner, and he must use the care required of a gratuitous bailee for its safekeeping until the true owner calls for it. As against everyone but the true owner, the owner of such premises has the duty to defend his custody and

possession of the mislaid property, and he is absolutely liable for a misdelivery.

1 AM. JUR.2d *Abandoned, Lost, Etc., Property* § 24 (1994); *see also Benjamin, supra; Rizt, supra; Schley, supra.*

### D. Treasure trove

According to the common law, treasure trove is any gold or silver in coin, plate, or bullion, whose owner is unknown, found concealed in the earth or in a house or other private place, but not lying on the ground. Where the common-law treasure trove doctrine has been applied to determine the ownership of a find, property considered as treasure trove has included gold or silver coin, and its paper representatives, buried in the earth or hidden in some other private place, including a mattress, a cabinet sink, and a piano. It is not essential to its character as treasure trove that the thing shall have been hidden in the ground; it is sufficient if it is found concealed in other articles, such as bureaus, safes, or machinery. While, strictly speaking, treasure trove is gold or silver, it has been held to include the paper representatives thereof, especially where found hidden with those precious metals.

1 AM. JUR.2d *Abandoned, Lost, Etc., Property* § 7 (1994); *see also Benjamin, supra; Jackson, supra.*

"Treasure trove carries with it the thought of antiquity; to be classed as treasure trove, the treasure must have been hidden or concealed so long as to indicate that the owner is probably dead or unknown." 1 AM. JUR.2d *Abandoned, Lost, Etc., Property* § 8 (1994). "Title to treasure trove belongs to the finder, against all the world except the true owner." 1 AM. JUR.2d *Abandoned, Lost, Etc., Property* § 26 (1994); *see also Ritz, supra.*

Remaining mindful of the various types of found property and the rights to possession of that property, we turn now to the case before us on review. Appellants were stripping motel rooms at the Best Western Motel, which belongs to Lock Hospitality Inc., on February 1, 1999. Their work, as independent contractors, included removing sheet rock or dry wall, ceiling tiles, and other material to prepare the motel for renovations. While working in room 118, appellants removed some ceiling tiles. Appellants found a cardboard box concealed on top of the heating and air vent that became visible as a result of the removal of the ceiling tiles. Appellant Terry described the box as "covered with dust." Appellant Stocks stated in his affidavit that "the box and its contents

appeared to have been located at the site for a very long time." Mr. Lock testified that in 1988 a beam was replaced in room 118 and the box was not discovered at that time. Upon opening the box, a large amount of old, dusty currency was discovered. Both appellants and Mr. Lock were in the room when the box was discovered. Neither appellants nor appellees claim to have concealed the property in the ceiling. It is apparent that the box was not lost. The circumstances suggest that it was either abandoned property, mislaid property, or treasure trove. Considering all of the facts as presented, we cannot say that the trial court's finding that the property was mislaid property was clearly erroneous. Specifically, we hold that the trial court's findings that "the money in controversy was intentionally placed where it was found for its security, in order to shield it from unwelcome eyes..." and that the "money was mislaid [property]" were not clearly erroneous.

We note that other jurisdictions have addressed similar fact situations and have determined that the property at stake was "mislaid" property. The Iowa Supreme Court addressed this issue in *Benjamin, supra*. In that case, a bank hired Benjamin to perform a routine service inspection on an airplane which it owned. During the inspection, Benjamin removed a panel from the wing. *Id*. The screws to the panel were old and rusted, and Benjamin had to use a drill to remove them. Upon removal of the panel, Benjamin discovered packets of currency totaling $18,000. Both Benjamin and the bank, as the owner of the plane, claimed ownership of the money. *Id*. The court reviewed the various types of property and determined that the money was "mislaid" property. The court explained that "the place where Benjamin found the money and the manner in which it was hidden are also important." They further noted that:

> the bills were carefully tied and wrapped and then concealed in a location that was accessible only by removing screws and a panel. These circumstances support an inference that the money was placed there intentionally. This inference supports the conclusion that the money was mislaid.

*Benjamin, supra*. After reaching this conclusion, the court held "because the money discovered by Benjamin was properly found to be mislaid property, it belongs to the owner of the premises where it was found." *Id*. The circumstances in *Benjamin* are similar to those now before us, and we are persuaded that the reasoning of the Iowa court was sound.

The Oregon Supreme Court has also considered a case involving facts similar to the case now on review before this court. In *Jackson, supra*, Mrs. Jackson, while working as a chamber maid at Arthur Hotel, discovered $800 concealed under the paper lining of a dresser drawer. *Id.* The court observed that "from the manner in which the bills in the instant case were carefully concealed beneath the paper lining of the drawer, it must be presumed that the concealment was effected intentionally and deliberately. The bills, therefore, cannot be regarded as abandoned property. *Id.* The court then held:

> The natural assumption is that the person who concealed the bills in the case at bar was a guest of the hotel. Their considerable value, and the manner of their concealment, indicate that the person who concealed them did so for purposes of security, and with the intention of reclaiming them. They were, therefore, to be classified not as lost, but as misplaced or forgotten property, and the defendant, as occupier of the premises where they were found, had the right and duty to take them into his possession and to hold them as a gratuitous bailee for the true owner.

*Jackson, supra.*

The case now before us presents circumstances similar to those upon which *Benjamin* and *Jackson* were decided. The trial court found that the original owner of the $38.310.00 acted intentionally in concealing his property. The trial court also recognized that the found property did not have the characteristics of antiquity required for the classification as treasure trove. We cannot say that the trial court's determination that the box was mislaid property was clearly erroneous. We hold that the trial court did not err when it found that the property in the present case was mislaid property and as such belongs to the owner of the premises in which the money was found. Accordingly, we affirm the trial court. [1]

Affirmed.

---

[1] Although not addressed by the parties on appeal, we note that there is a possibility that pursuant to Arkansas' "Unclaimed Property Act," Ark. Code Ann. § 18-28-101, et. seq., the State might have asserted an interest in the money in controversy in this case, but did not do so.