Marvin JONES, et al. *v.* JUANITA S. WOOD FAMILY
LIMITED PARTNERSHIP

CA 05-1202                                                    236 S.W.3d 572

Court of Appeals of Arkansas
Opinion delivered May 31, 2006

*Rice & Adams*, by: *Scott A. Scholl*, for appellants.

*Wright, Lindsey & Jennings, LLP*, by: *Stephen R. Lancaster* and *Colin R. Jorgensen*, for appellee.

TERRY CRABTREE, Judge. Appellants are homeowners in the Woodmeade Phase II subdivision in Lonoke County. In the summer of 2004, they placed a landscape structure on the eastern end of the subdivision's Edgewood Drive. Appellee, the Juanita S. Wood Family Limited Partnership, owns land adjacent to the subdivision and claimed that the structure blocked its access thereto. On September 2, 2004, appellee asked the trial court to issue an injunction requiring removal of the impediment, and the trial court did so by order entered June 23, 2005. Appellants now appeal from that ruling, asserting numerous points of error. We affirm.

The subdivision was developed by the Wood family in the 1990s. It consists of several large lots on either side of Edgewood Drive, which the developers platted as a sixty-foot easement running west to east for the entire 1286-foot width of the subdivision. To the east lies appellee's property — a large undeveloped tract known as the Turkey Farm. Fred Wood, one of the partners in appellee, testified that, for many years, he used the road that became Edgewood Drive to gain access to the Turkey Farm. In fact, when the road bed was laid and paved in approximately 1995, it extended some forty feet into the Turkey Farm. There was deposition testimony below that school buses and garbage trucks serving the subdivision used the Turkey Farm road extension as a turn-around area.

According to Wood, in 2002, some of the subdivision residents complained that his cattle, which were pastured on the Turkey Farm, were migrating into their neighborhood. As a result, Wood constructed a fence running north and south along the Turkey Farm property line at the eastern edge of the subdivision. The fence did not have a gate or a gap in it, so Wood accessed the Turkey Farm from another road farther east. Additionally, because the fence rendered the turn-around on the Turkey Farm property inaccessible, school buses no longer drove down Edgewood Drive, and garbage trucks had to back down the street. Subdivision residents, concerned by the situation, met with County Judge Charles Troutman in July 2004 and proposed: 1) construction of a new turn-around approximately thirty feet wide (west to east) and sixty feet long (north to south) at the eastern edge of the subdivision; 2) construction of a covered bus shelter in the turn-around area; 3) planting trees or shrubs around the shelter. The residents

asked the county to "relinquish ownership" of the thirty-by-sixty-foot segment of roadway and offered to pay for the improvements. Judge Troutman met with the residents in July 2004, visited the site, and determined that the county would construct the turn-around. He did not expressly approve or disapprove of any further construction.

Thereafter, the judge searched the county records and discovered that Edgewood Drive had not been formally accepted as a county road. He issued an order declaring 1254 feet of Edgewood Drive as part of the county road system. The order did not accept the last thirty-three feet of the dedicated roadway.

After a county road crew began scraping the area for the proposed turn-around, appellants began construction of what the parties call a flower box in the turn-around area. The flower box is made out of landscape timbers, is sixteen to twenty-four feet wide, and contains, at the present time, planting soil and three concrete posts with reflectors. It is located in the thirty-three feet of roadway that the county judge did not formally accept, and it is situated virtually in the middle of the roadway, facing westward.

Fred Wood discovered the flower box on or about August 6, 2004, while its construction was in progress. He immediately removed the landscape timbers and cut a hole in his fence, allowing him renewed access to the Turkey Farm. When appellants continued to construct the flower box, Wood filed suit against them and against Judge Troutman and Lonoke County, seeking an injunction requiring removal of the flower box.

The case was heard by the trial judge on cross-motions for summary judgment. After a hearing, he ruled that Edgewood Drive was a public road; that appellee had a right to use Edgewood Drive for unencumbered access to its farm; and that the flower box was within the public right-of-way. The judge then issued a permanent injunction requiring appellants to remove the flower box within thirty days. Appellants now appeal from that order.

Normally, on a summary-judgment appeal, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Tunnel v. Progressive N. Ins. Co.*, 80 Ark. App. 215, 95 S.W.3d 1 (2003). But, in a case where the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id.* When parties file cross-motions for summary judgments, as was done in this case, they essentially agree

that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *Id.*

We are also reviewing the issuance of an injunction. Equity matters, including the granting of an injunction, are reviewed de novo on appeal. *Brown v. Seeco, Inc.*, 316 Ark. 336, 871 S.W.2d 580 (1994). However, the granting of an injunction rests within the sound discretion of the trial judge, *id.*, and we will not reverse unless the trial court has abused its discretion. *Doe v. Arkansas Dep't of Human Servs.*, 357 Ark. 413, 182 S.W.3d 107 (2004).

Appellants argue first that the trial court erred in granting relief based on Edgewood Drive's status as a "public road." They contend that, while appellee maintained below that Edgewood was a *county road*, it did not assert that Edgewood was a public road; thus, they claim, the trial court issued the injunction on a theory neither pled nor tried by appellee. *See Coran Auto Sales v. Harris*, 74 Ark. App. 145, 45 S.W.3d 856 (2001) (holding that, where a particular theory is neither pled, tried by the express or implied consent of the parties, nor proven by the evidence, a trial court commits error in awarding judgment on that basis).

We find no grounds for reversal on this point. The relief sought by appellee in its complaint did not depend on any particular characterization of Edgewood Drive as a public road or a county road; appellee simply asked that the obstruction in the roadway be removed. Further, the county defendants' motion for summary judgment averred that the last few feet of roadway not accepted by the county remained a public road, and appellee's counsel stated during the summary-judgment hearing that "regardless of whether it's a county road, it was at least a public road," and "this is an access case over at least a public road." Thus, Edgewood's status as a public road was before the trial judge, and he did not err in awarding relief on that basis.

Appellants argue next that there was insufficient evidence that Edgewood was a public road. They cite *Craig v. O'Bryan*, 227 Ark. 681, 301 S.W.2d 18 (1957), in which a roadway across private land was deemed not to be public because the evidence did not show seven years of continuous adverse use by the general public and showed only occasional road work by the county. The case before us, however, does not involve an attempt to prove that a drive located on private land has become a public road via a prescriptive easement. *See, e.g., Carson v. Drew County,*

354 Ark. 621, 128 S.W.3d 423 (2003). Rather, the road in this case was conceived as a public road and was dedicated to the county by the subdivision's developer. A dedication is the donation of land or the creation of an easement for public use. *City of Cabot v. Brians*, 93 Ark. App. 77, 216 S.W.3d 627 (2005). Additionally, there was evidence that the county had maintained the road, possibly since 1995, and that the road had been a school-bus and mail route. Such use has been considered significant in determining the public nature of a roadway. *See, e.g., Frazier-Hampton v. Hesterly*, 89 Ark. App. 211, 201 S.W.3d 447 (2005). Given these circumstances, we do not believe that the trial court erred in declaring Edgewood to be a public road.

■ Next, appellants argue that County Judge Charles Troutman acted within his discretion in making alterations to Edgewood Drive and that appellee had no right to prevent these alterations. They cite *Arkansas State Highway Commission v. Bingham*, 231 Ark. 934, 333 S.W.2d 728 (1960), for the proposition that a landowner may not complain about inconvenient changes in a public road, but that case is distinguishable. There, the issue was whether a landowner could receive just compensation when the Highway Commission changed a roadway and reduced traffic flow to the owner's gas station. Our supreme court held that the landowner had no right to continued traffic flow but emphasized that, by contrast, a landowner's right of ingress and egress via a public road — such as we have in the case at bar — is a compensable "property right." *Id.* at 944-45, 333 S.W.2d at 734. The court thus recognized the importance accorded a landowner's use of a public road to gain access to his property. *See also Wright v. City of Monticello*, 345 Ark. 420, 47 S.W.3d 851 (2001) (ruling that an adjoining landowner who has used a public street for ingress and egress has an independent right to use the street as a means of access, and abandonment of the road by the public entity does not affect that right).[1]

---

[1] Appellants contend that *Wright* is not applicable because Fred Wood "admitted below that [appellee] held no private right[s] in the roadway beyond those of the general public." Our reading of Wood's testimony shows some confusion surrounding the questions he was asked on this point. In any event, we do not view his testimony as relinquishing appellee's right to use the road for access to its property, which Wood consistently asserted throughout the case.

■ Next, we address appellants' contention that the trial court's "*sua sponte* designation that Edgewood Drive was a public road had the effect of overruling the County Court's decision and usurping the constitutional exercise of the County Court's authority." We point out first that, as stated earlier, the trial court's determination that Edgewood was a public road was not a *sua sponte* ruling. Secondly, while we recognize that county judges have the authority to operate the system of county roads, *see* Ark. Const. amend. 55, § 3 (Repl. 2004), and that county courts have the power to make changes in county roads, *see* Ark. Code Ann. § 14-298-120 (1987), and *Reding v. Wagner,* 350 Ark. 322, 86 S.W.3d 386 (2002), nothing the trial court did in the present case invaded the county judge's province. The court declared, as it had the authority to do, that appellants could not obstruct a public road and interfere with appellee's access to its property. *See generally Maroney v. City of Malvern,* 320 Ark. 671, 899 S.W.2d 476 (1995).

Finally, we turn to appellants' argument that appellee failed to prove it was entitled to injunctive relief. To establish sufficient grounds for a permanent injunction, the movant must show, *inter alia,* that it is threatened with irreparable harm; that this harm outweighs any injury that granting the injunction will inflict on other parties; and that the public interest favors the injunction. *See United Food & Comm'l Workers Int'l Union v. Wal-Mart Stores, Inc.,* 353 Ark. 902, 120 S.W.3d 89 (2003). Appellants contend that appellee failed to meet the above criteria because it was Fred Wood, not appellants, who blocked access to the Turkey Farm by erecting the fence in 2002; that Fred Wood had an alternative means of accessing the property; and that Fred Wood testified that the flower box was not so wide as to completely restrict his access to the property.

■ We do not believe that the trial court abused its discretion in issuing the injunction. Appellants' flower box has potential aesthetic value but serves no other discernable purpose. By contrast, the harm caused by the box is worthy of redress. Appellants have placed an obstruction in the middle of a public road; and, while the obstruction does not blockade the road in its entirety, it impedes appellee's recognized property right to use the road as access to its property. *See Wright, supra.* Moreover, we believe that obstructing a public road, especially where it interferes with ingress and egress, constitutes irreparable harm justifying the issuance of an injunction. Money cannot restore the landowner's

property right nor measure the value of using of a public road. *See generally United Food & Comm'l Workers, Int'l Union, supra* (holding that harm is usually considered irreparable when it cannot be adequately compensated by money damages or redressed in a court of law). We further note that appellee's right to use this public road was not diminished by the existence of alternative means of ingress and egress. *See Wright, supra; see also Tweedy v. Counts,* 73 Ark. App. 163, 40 S.W.3d 328 (2001).

In light of the above, we affirm the trial court's decision to grant the injunction.[2]

Affirmed.

VAUGHT and BAKER, JJ., agree.

---

[2] We also reject appellants' brief argument that, because appellee constructed a fence that blocked the road in 2002, its entitlement to relief is barred by the unclean-hands doctrine. There is evidence that the fence was built as an accommodation to subdivision residents who were complaining about roaming cattle.