**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 95-40748**
_____

**UNITED STATES OF AMERICA**

**Defendant-Appellee,**

**versus**

**BILLY RAY SHIVERS**

**Plaintiff-Appellant.**

_____

**Appeal from the United States District Court**
**for the Eastern District of Texas**
_____

September 13, 1996

Before KING, JONES, and DUHE, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Billy Ray Shivers found buried treasure at the site of an abandoned lumber mill company town.  Unfortunately for Shivers, the site is located in the Angelina National Forest, and the federal government claimed ownership of and seized from Shivers some 50-70 metal tokens he uncovered with a metal detector.  The district court denied his Fed. Rule Crim. Proc. 41(e) motion seeking return of the tokens, as it concluded Shivers did not own them pursuant to either the Archeological Resources Protection Act ("ARPA"), 16 U.S.C. § 470ee, or the common law of finds.  This court approves the district court's conclusion and therefore affirms.

**BACKGROUND**

The tokens that Shivers excavated from the Aldridge Lumber Company mill site were used by the saw mill as payment for workers 50-100 years ago. The tokens and other items were seized pursuant to a search warrant from Shivers's home when the government came to believe he had obtained them in violation of ARPA, which forbids the un-permitted excavation of archeological resources from federal lands.

When the government chose not to pursue criminal charges against Shivers, it eventually gave back the rest of the seized property, but refused to return the tokens to him. The district court's rebuff of Shivers's Fed. R. Crim. Proc. 41(e) motion for return of seized property gives rise to this appeal.

**DISCUSSION**

A.    Standard of Review

As Shivers expressly concedes the factual findings of the district court, this court reviews the district court's conclusions of law de novo. *Palma v. Verex Assurance, Inc.,* 79 F.3d 1452, 1458 (5th Cir. 1996).

B.    Ownership under the ARPA: 16 U.S.C. § 470kk

Shivers argues that the plain language of ARPA § 470kk vests him with ownership of the Aldridge tokens because he is a private collector of coins and other artifacts not defined by the ARPA as archaeological resources.

ARPA was enacted by Congress to protect "archaeological resources" found on public lands and to promote study and

2

evaluation of these resources. *See* 16 U.S.C. § 470aa(b). An "archaeological resource" is statutorily defined as

> any material remains of past human life or activities which are of archeological interest, as determined under uniform regulations promulgated pursuant to this chapter . . . . No item shall be treated as an archaeological resource under regulations under this paragraph *unless such item is at least 100 years of age.*

16 U.S.C. § 470bb(1) (emphasis added). "Archaeological resources" so defined remain property of the United States if removed from public lands. *See* 16 U.S.C. § 470cc(b)(3); 36 C.F.R. § 296.6(b)(5); H.R. Rep. No. 311, 96th Cong., 1st Session, 7 (1979). Since the Aldridge tokens are between 50 and 100 years old, however, they are not "archaeological resources" for purposes of the ARPA.

Shivers's principal argument rests on a facile premise: because the tokens are not "archaeological resources," § 470kk of the ARPA conveys an ownership interest to him as a private collector of coins. Section 470kk provides that

> [n]othing in this chapter applies to, or requires a permit for, the collection for private purposes of any rock, coin, bullet, or mineral which is not an archaeological resource, as determined under uniform regulations promulgated under section 470bb(1) of this title.

16 U.S.C. § 470kk(b). From this provision, Shivers infers that private individuals are authorized by ARPA to remove coins less than 100 years old from public land and to retain ownership.

Shivers also suggests that the purpose and policy of the ARPA support his conclusion. By encouraging private collection of

3

non-"archaeological resources", the ARPA may actually help safeguard these resources, protecting them from further dislocation caused by either human or natural disturbances. To achieve such protection, Congress did not explicitly retain an ownership interest in non-"archaeological resources" found on public lands, though it did prevent private ownership of statutorily covered artifacts. Shivers urges that the asserted failure to retain ownership over non-"archaeological resources" evinces congressional intent to cede their ownership to private collectors.

But the premise on which Shivers's argument rests is a faulty one, belied by the very passage on which he relies. Section 470kk(b) provides that "*[n]othing in this chapter applies to . . . the collection for private purposes* of any rock, coin, bullet, or mineral which is not an archaeological resource . . . ." (emphasis added). Because the ARPA does not apply to artifacts less than 100 years old, it does not regulate the private collection of such non-"archaeological resources". This statute cannot vest Shivers with an ownership interest in the tokens because it neither divests ownership interest from the United States or, indeed, says anything at all about "archaeological resources" it does not cover.

Even assuming *arguendo* that the ARPA regulates private collection of non-"archaeological resources," however, Section 470kk(b) does not transfer to or vest ownership of the Aldridge tokens in Shivers. The statute merely provides that private collectors need not obtain a permit for the collection of certain artifacts. Shivers implies a transfer of property rights from this

**4**

provision, arguing that since the statute allows for the private collection of non-"archaeological resources," it necessarily entitles the collector to retain or own what he has collected. This conclusion, however, is neither supported by the text of the statute nor is it a necessary implication of the right to collect non-"archaeological resources." Admittedly, the express statutory authorization to collect non-"archaeological resources" without a permit is much less valuable to a private collector if he may not retain what he collects; unless the collector enjoys collection for its own sake, ARPA furnishes little incentive to discover and gather non-"archaeological resources." But it would not be absurd to conclude that Congress dispensed with the cumbersome process of requiring permits for gathering non-"archaeological resources," even though it refused to transfer ownership of these less ancient artifacts.

Further, the ARPA is concerned with protecting the integrity of archaeological sites, presumably even moreso if they are located in national forests. *See, e.g.,* 16 U.S.C. § 470cc(b)(1)-(b)(2) (requiring that those who apply for a permit to excavate archaeological resources be "qualified to carry out the permitted activity."); 36 C.F.R. § 296.8(a)(1); 1979 U.S.C.C.A.N. 1709, 1712 (recognizing the importance of protecting the unaltered integrity of archaeological sites). The record suggests that several hundred shovel holes found at the Aldridge site were

attributed to Shivers's excavation activities.[1]  Considering the resulting landscape alteration, Congress's intent to regulate digging or excavating on public archaeological sites is easy to understand, while Shivers's contrary position in favor of encouraging unregulated amateur collection is virtually incomprehensible.

Finally, the "arrowhead exception" to the ARPA discussed by Shivers is inapposite and irrelevant.  This exception is not intended to encourage removal of arrowheads from public lands, but rather to exempt such removal from the civil and criminal penalty provisions of the ARPA.  *See* 16 U.S.C. § 470ff(a)(3); 36 C.F.R. § 296.3(a)(3)(iii).  Unlike the tokens excavated by Shivers, the arrowhead exception is limited to those found on the surface of public lands.  *See* 16 U.S.C. § 470ff(a)(3) ("[n]o penalty shall be assessed . . . for the removal of arrowheads located on the surface of the ground.").  Also, the ARPA expressly provides that the removal of arrowheads can be penalized under other regulations or statutes.  *See, e.g.,* 49 Fed. Reg. 1016, 1018 ("regulations under other authority which penalize [the removal of surface arrowheads] remain effective.") No inferences or implications helpful to Shivers are found in these provisions.

Because the ARPA does not vest Shivers with an ownership interest in the tokens, we need not discuss the Forest Service

---

[1]     These figures are taken from a report relied upon by the district court and prepared by an Assistant Forest Archaeologist for the United States Forest Service.  This report also concludes that many of the holes attributed to Shivers were not backfilled after excavation.  Shivers does not challenge the accuracy or conclusions of the report.

regulations, relied upon by the government, which go beyond ARPA and attempt to define as "archaeological resources," prohibited from excavation, artifacts that are at least <u>50</u> years old. *See* 36 C.F.R. §§ 261.2, 261.9(g). The asserted conflict between the Forest Service regulations and the ARPA does not need to be resolved in this case.

C.    <u>Ownership and the Federal Common Law of Finds</u>

The district court concluded not only that the ARPA did not convey to Shivers an ownership interest in the Aldridge tokens, but also that in the absence of express or statutory title transfer, the federal common law of finds dictates that the United States, not Shivers, owns the tokens.

The federal common law of finds, including certain critical exceptions, is pertinent to this case. As the Eleventh Circuit explained,

> [t]he common law of finds generally assigns ownership of the abandoned property without regard to where the property is found. Two exceptions to the rule are recognized: *First, when the abandoned property is embedded in the soil, it belongs to the owner of the soil;* Second, when the owner of the land where the property is found (whether on or embedded in the soil) has constructive possession of the property such that the property is not 'lost,' it belongs to the owner of the land.

*Klein v. Unidentified Wrecked & Abandoned Sailing Vessel,* 758 F.2d 1511, 1514 (11th Cir. 1985) (emphasis added). In *Klein,* a vessel submerged beneath the waters of Biscayne National Park, Florida, had been rediscovered and salvaged by a private diver. Holding that the wreck was property of the government, not the diver, the

court emphasized that the "ship is *buried in the soil.* The soil belongs to the United States as part of its national park system . . . . When the United States acquired title to the land from Florida in 1973, it also acquired title to the shipwrecks embedded in that soil . . . . Thus the United States has never legally lost the subject shipwreck and, as the owner of the land on and/or water in which the shipwreck is located, it owns the shipwreck." *Id.* at 1514 (emphasis added). Similarly, the Aldridge tokens excavated by Shivers were buried in the soil of the Angelina National Forest. As in *Klein,* this soil belongs to the United States, and with it the embedded tokens under the first exception to the federal common law of finds discussed in *Klein.*[2]

Shivers does not challenge this interpretation of the federal common law of finds. Indeed, his only retort is that the common law of finds is inapplicable because Congress expressly provided in § 470kk(b) of the ARPA that private collectors enjoy ownership of the non-archaeological resources that they discover on public lands. As already discussed, this contention is indefensible. The district court correctly held that the United States owns the tokens that Shivers discovered.

---

[2] Analyzing the ARPA, Judge Posner has also explained that "there is no right to go upon another person's land, without his permission, to look for valuable objects buried in the land and take them if you find them." *United States v. Gerber,* 999 F.2d 1112, 1114-15 (7th Cir. 1993), *cert. denied,* ___ U.S. ___, 114 S. Ct. 878 (1994).

## CONCLUSION

For the foregoing reasons, the judgment of the district court denying Shivers's 41(e) motion for the return of the Aldridge tokens is **AFFIRMED**.