OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



February 21, 2002

Mr. F. Lawrence Oaks
Executive Director
Texas Historical Commission
1511 Colorado Street
Austin, Texas 78711-2276

Opinion No. JC-0465

Re: Whether the state owns artifacts removed from state lands prior to the adoption of the Antiquities Code in 1969, and related questions (RQ-0416-JC)

Dear Mr. Oaks:

On behalf of the Texas Historical Commission, you request an opinion regarding the ownership and custody of artifacts removed from state public lands before and after the adoption in 1969 of the Antiquities Code of Texas, chapter 191 of the Natural Resources Code.[1] You specifically ask:

> 1. Does the State of Texas own artifacts that were removed from State lands prior to the effective date of the Antiquities Code in 1969?
>
> 2. Does the State of Texas own artifacts that have been removed from city, county, or other political subdivisions' lands, either prior to the effective date of the amendment to the Antiquities Code in 1977, or subsequently?
>
> 3. If it is determined that the State of Texas owns artifacts that were removed from State and/or other governmental lands prior to the effective date of the Antiquities Code of 1969, is the [Texas Historical Commission] legal custodian of items not described in that law?
>
> 4. Does [article 147b of the] Penal Code of 1925 evidence an intent on the part of the State to claim the artifacts as of the

---

[1]*See* Letter from F. Lawrence Oaks, Executive Director, Texas Historical Commission, to Honorable John Cornyn, Texas Attorney General (Aug. 14, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

> date of passage of that law, and have the effect of giving the
> State a claim to them as of its effective date?

Request Letter, *supra* note 1, at 2.

You do not provide any background or factual context. Given the abstract and global nature of your questions, we answer them to the extent we can in general terms by referring only to the former Penal Code provisions regulating archaeological explorations, the Antiquities Code, and to the common law of finds.[2] We first conclude that whether the state owns artifacts removed from state lands prior to 1969 depends on the particular artifacts and where they are found. We cannot provide a definite answer that would apply to all categories or types of artifacts. With respect to artifacts found *on submerged state lands*, the state, as owner of the land, would own artifacts found buried in the soil or over which the state had constructive possession; otherwise, the submerged artifacts would belong to the person who had found them. The state, as owner of the land, would own artifacts found *on unsubmerged state lands* that are classified as "mislaid" property; however, artifacts classified as "lost" property would belong to the person who had found them. We next conclude that the state would not own artifacts removed prior to 1969 from lands owned by political subdivisions of the state unless they were determined to be "lost" property and the state had "found" them. Under the Antiquities Code, the state owns artifacts removed subsequent to 1969 from lands belonging to political subdivisions of the state. Additionally, we conclude that the Texas Historical Commission is the legal custodian of artifacts removed from state public lands prior to 1969 if they are recovered and retained by the state. Finally, we conclude that former articles 147a, 147b, 147b-1, and 147b-2 of the Penal Code did not, as a matter of law, confer to the state ownership of artifacts removed from state lands prior to 1969.

---

[2]A letter from Robert J. Truhill, submitted on behalf of the Ysleta Del Sur Pueblo, a federally recognized Native American Indian Tribe located in El Paso County, asks this office to consider the provisions of the Native American Graves Protection and Repatriation Act, 25 U.S.C. §§ 3001-3013 (1994), and whether or not it preempts any provisions of the Antiquities Code. *See* Letter from Robert J. Truhill, Diamond Rash Gordon & Jackson, P.C., Attorneys at Law, to Susan Denmon Gusky, Chair, Opinion Committee, Office of the Attorney General (Sept. 19, 2001). The Native American Graves Protection and Repatriation Act (the "Act") requires federal agencies and museums (which term includes a state agency that receives federal funds and has possession of or control over Native American cultural items) to inventory Native American human remains and other objects in its possession and return them upon request to the tribes with the appropriate ethnic or cultural affiliation. *See* 25 U.S.C. §§ 3001-3005 (1994). The Act also establishes the ownership rights of Native American tribes and their descendants in "Native American cultural items which are excavated or discovered *on Federal or tribal lands after November 16, 1990.*" *Id.* § 3002 (emphasis added). *See Castro Romero v. Becken*, 256 F.3d 349, 354 (5th Cir. 2001) (By its plain terms, the reach of the statute is limited to federal or tribal lands and does not apply to municipal lands.); *Western Mohegan Tribe and Nation v. New York*, 100 F. Supp. 2d 122, 125-26 (N.D.N.Y. 2000), *vacated in part on other grounds*, 246 F.3d 230 (2d Cir. 2001) (federal statute did not apply because state-owned land was neither federal nor tribal land). We do not consider the Act's provisions in relation to the Antiquities Code because the Texas Historical Commission's request asking about artifacts found on *state* public lands does not raise the issue, *see* Request Letter, *supra* note 1, and Mr. Truhill is not an authorized requestor, *see* TEX.GOV'T CODE ANN. § 402.042 (Vernon 1998). Additionally, Mr. Truhill does not indicate how the Act is otherwise implicated by the present request.

We begin our analysis by providing the legal context for your questions. Before the adoption of the Antiquities Code in 1969, several repealed provisions of the Penal Code regulated archaeological activity in the state. Former article 147a, adopted in 1931, made it unlawful — a misdemeanor — to remove, destroy, or mutilate archaeological artifacts unless the owner of the land consented. *See* Act of Aug. 17, 1931, 42d Leg., 1st C.S., ch. 32, §§ 1, 2, 1931 Tex. Gen. Laws 71, 71-72. In the case of public lands, the statute required the consent of the commissioners court of the county in which the land was located. *See id.* Former article 147b, adopted in 1939, prohibited forging archaeological objects, defacing Native American paintings, marks, or carvings and required nonresidents of the state to obtain a permit or license from the Secretary of State to explore or excavate archaeological sites on either private or state lands. *See* Act of May 10, 1939, 46th Leg., R.S., ch. 1, §§ 1-3, 1939 Tex. Gen. Laws 60, 60-61. Article 147b also provided that a person who violated its provisions "shall be guilty of a misdemeanor and shall forfeit to the State all articles and materials discovered by or misrepresented through his action or efforts" and subject to a fine and/or imprisonment for thirty days. *See id.* § 6, 1939 Tex. Gen. Laws, at 61. Former article 147b-1, adopted in 1963, made it unlawful to excavate on land owned or controlled by the state or to remove archaeological features from state-owned land except in compliance with articles 147a and 147b. *See* Act of Apr. 30, 1963, 58th Leg., R.S., ch. 153, 1963 Tex. Gen. Laws 434. Finally, former article 147b-2, also adopted in 1963, made it unlawful for "any person, not being the owner thereof" to injure, remove, or destroy any historical structure or artifact. *See* Act of May 8, 1963, 58th Leg., R.S., ch. 193, § 1, 1963 Tex. Gen. Laws 519.

In 1969, the legislature adopted the Antiquities Code of Texas to protect and preserve all archaeological, historical, or educational sites and artifacts. *See* Act of Sept. 9, 1969, 61st Leg., 2d C.S., ch. 2, § 2, 1969 Tex. Gen. Laws 98, 98-99. The law became effective on September 10, 1969. *See id.* § 23, 1969 Tex. Gen. Laws, at 103. The legislation repealed articles 147a, 147b, 147b-1, and 147b-2 of the Penal Code, although it reenacted the substance of those provisions as part of the Antiquities Code. *See id.* §§ 14-17, 20, 22, 1969 Tex. Gen. Laws, at 102, 103. Additionally, it created the "Antiquities Committee" to generally designate state archaeological landmarks, provide for discovery and salvage operations, issue permits for archaeological explorations, and to be the "legal custodian of all items hereinafter described which have been recovered and retained by the State of Texas." *Id.* § 4, 1969 Tex. Gen. Laws, at 99. Significantly, sections 5 and 6 of the law expressly made archaeological sites and artifacts located on lands owned by the state or any political subdivision of the state the "sole property" of the state:

> Sec. 5. All sunken or abandoned pre-twentieth century ships and wrecks of the sea and any part [of] or the contents thereof and all treasure imbedded in the earth, *located in, on or under the surface of lands belonging to the State of Texas,* including its tidelands, submerged lands and the beds of its rivers and the sea within the jurisdiction of the State of Texas *are hereby declared to be State Archeological Landmarks and are the sole property of the State of*

*Texas* and may not be taken, altered, damaged, destroyed, salvaged or excavated without a contract or permit of the Antiquities Committee.

Sec. 6. All other sites, objects, buildings, artifacts, implements, and locations of historical, archaeological, scientific, or educational interest, including but expressly not limited to, those pertaining to prehistoric and historical American Indian or aboriginal campsites, dwellings, and habitation sites, their artifacts and implements of culture, as well as archeological sites of every character *that are located in, on or under the surface of any lands belonging to the State of Texas or by any county, city, or political subdivision of the state are hereby declared to be State Archaeological Landmarks and are the sole property of the State of Texas* and all such sites or items located on private lands within the State of Texas in areas that have been designated as a "State Archeological Landmark" as hereinafter provided, may not be taken, altered, damaged, destroyed, salvaged, or excavated without a permit from, or in violation of the terms of such permit of, the Antiquities Committee.

*Id.* §§ 5, 6, 1969 Tex. Gen. Laws, at 99-100 (emphasis added). In 1977, the Antiquities Code was codified without substantive changes in chapter 191 of the Natural Resources Code, and the substance of sections 5 and 6 at sections 191.091, 191.092, and 191.093 of that code. *See* Act of May 24, 1977, 65th Leg., R.S., ch. 871, §§ 1.001, 191.001-.174, 1977 Tex. Gen. Laws 2345, 2347, 2683, 2687; *see also* TEX. NAT. RES. CODE ANN. §§ 191.091, .092(a), .093 (Vernon 2001).[3] In 1995,

---

[3]Sections 191.091, 191.092(a) and 191.093 of the Natural Resources Code provide as follows:

**§ 191.091.  Ships, Wrecks of the Sea, and Treasure Imbedded in Earth**

Sunken or abandoned pre-twentieth century ships and wrecks of the sea, and any part or the contents of them, and all treasure imbedded in the earth, located in, on, or under the surface of the land belonging to the State of Texas, including its tidelands, submerged land, and the beds of its rivers and the sea within jurisdiction of the State of Texas, are declared to be state archeological landmarks and are eligible for designation.

**§ 191.092.  Other Sites, Artifacts, or Articles**

(a) Sites, objects, buildings, artifacts, implements, and locations of historical, archeological, scientific, or educational interest, including those pertaining to prehistoric and historical American Indians or aboriginal campsites, dwellings, and habitation sites, their artifacts and implements of culture, as well as archeological sites of every character that are located in, on, or under the surface of any land belonging to the State of Texas or to any county, city, or political subdivision of

(continued...)

the legislature abolished the Antiquities Committee and transferred its powers and duties to the Texas Historical Commission. *See* Act of May 8, 1995, 74th Leg., R.S., ch. 109, § 27, 1995 Tex. Gen. Laws 909, 919. The legislature provided that "Committee" in the Antiquities Code means the Texas Historical Commission. *See id.* § 18, 1995 Tex. Gen. Laws, at 915; *see also* TEX. NAT. RES. CODE ANN. § 191.003(1) (Vernon 2001).

With this background, we return to your questions. We consider your first and last questions together. You first ask: "Does the State of Texas own artifacts that were removed from State lands prior to the effective date of the Antiquities Code in 1969?" Request Letter, *supra* note 1, at 2. You also ask: "Does [article 147b of] the Penal Code of 1925 evidence an intent on the part of the State to claim the artifacts as of the date of passage of that law, and have the effect of giving the State a claim to them as of its effective date?" *Id.* In light of the first question, we understand the last question to ask whether former articles 147a, 147b, 147b-1, and 147b-2 of the Penal Code, as a matter of law, confer to the state ownership of artifacts removed from state lands prior to 1969.

We conclude in the negative. While the state may in a particular case require the forfeiture of artifacts removed from state lands or seek to deny the person who removed the artifacts possession or ownership of them for violation of these provisions,[4] we do not believe that the repealed statutes evidenced a general intent by the state to claim ownership of all artifacts found on state lands. Like a court, we endeavor to discover the legislature's intent from the actual language of the statute. *See Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex. 1997). By their terms, the Penal Code provisions regulated archaeological explorations, but did not expressly assert state ownership over artifacts discovered on state lands. *See supra*, pp. 2-3. And we have found no

---

[3](...continued)
the state are state archaeological landmarks and are eligible for designation.

. . . .

**§ 191.093.  Prerequisites to Removal, Altering, Damaging, Destroying, Salvaging, or Excavating Certain Landmarks**

Landmarks under Section 191.091 or 191.092 of this code are the sole property of the State of Texas and may not be removed, altered, damaged, destroyed, salvaged, or excavated without a contract with or permit from the committee.

TEX. NAT. RES. CODE ANN. §§ 191.091, .092(a), .093 (Vernon 2001).

[4]*See Platoro Ltd., Inc. v. Unidentified Remains of a Vessel*, 371 F. Supp. 351, 354 (S.D. Tex. 1970), *rev'd*, 508 F.2d 1113 (5th Cir. 1975) (Platoro I) (state contending that Platoro's salvage activities constituted trespass on state land and were in violation of several statutes including article 147b); *Platoro Ltd., Inc. v. Unidentified Remains of a Vessel*, 518 F. Supp. 816, 819 n.1 (W.D. Tex. 1981), *aff'd in part, vacated in part*, 695 F.2d 893 (5th Cir. 1983) (Platoro II) (state again contending that Platoro's salvage activities constituted trespass and violated several state statutes including article 147b); Patty Gerstenblith, *Identity and Cultural Property: The Protection of Cultural Property in the United States*, 75 B.U.L REV. 559, 589 (1995) (and cases cited) ("A finder who commits trespass in acquiring the property may lose the right to possession.").

authority — nor have you directed us to any — indicating that these regulatory provisions impliedly asserted state ownership over all artifacts removed from state land.

While you do not provide any explanations or legal authority, we presume you ask about the Penal Code provisions because the state in *Platoro Ltd., Inc. v. Unidentified Remains of a Vessel* asserted a claim under former article 147b for possession of 16th century shipwreck artifacts in the court case that led to the adoption of the Antiquities Code. *See* R. Randall Bridwell, *The Texas Antiquities Code: An Historical Commentary in a Contemporary Context*, 24 Sw. L.J. 326 (1970). Texas was ultimately granted possession of the artifacts in the *Platoro* case, but not on the basis of section 147b or any other Texas statute, as far as we can tell. Possession in that case was granted, although incorrectly, on the basis of sovereign prerogative. *See Platoro Ltd., Inc. v. Unidentified Remains of a Vessel*, 518 F. Supp. 816, 819 n.1 (W.D. Tex. 1981), *aff'd in part, vacated in part*, 695 F.2d 893 (5th Cir. 1983) (Platoro II).

The *Platoro* line of cases are the only cases that appear to have dealt with the ownership of artifacts removed from state lands prior to the adoption of the Antiquities Code and are presumably the basis for your suggestions that the state might own such artifacts as a matter of law. The *Platoro* line of cases involved a long and complex dispute in which the state asserted ownership over 16th century artifacts removed by a salvage company from a Spanish galleon that sank off the Texas shore. *See Platoro Ltd., Inc. v. Unidentified Remains of a Vessel*, 695 F.2d 893, 901 (5th Cir. 1983) (Platoro II) (summarizing history of case). The state proffered several legal theories to support its ownership claim — including the British common-law doctrine of sovereign prerogative, which allows ownership of an abandoned wreck to revert to the sovereign — and to deny Platoro possession or a salvage claim because its exploration of the vessel violated state statutes, including former article 147b. *See Platoro Ltd., Inc. v. Unidentified Remains of a Vessel*, 371 F. Supp. 351, 353 (S.D. Tex. 1970), *rev'd*, 508 F.2d 113 (5th Cir. 1975) (Platoro I); *Platoro Ltd., Inc. v. Unidentified Remains of a Vessel*, 518 F. Supp. at 819 n.1. In 1976, the United States District Court for the Western District of Texas ruled in an unpublished opinion that the state owned the artifacts by virtue of its sovereignty. *See Platoro*, 518 F. Supp. at 820. Platoro did not appeal this ruling. *See id.* In 1981, that same court flatly stated that "[t]his theory [of ownership] is without merit, but the Court is bound by the doctrine of res judicata . . . ." *Id.* at 819-20 (footnote omitted). The court concluded:

> Therefore, regardless of the accuracy of the application of the law reflected in that [1976] order, this Court is precluded from applying the maritime law of finds as recently enunciated by the Fifth Circuit in a very similar and instructive case, *Treasure Salvors, Inc. v. The Unidentified Wrecked & Abandoned Sailing Vessel*, 569 F.2d 330 (5th Cir. 1978).

*Id.* at 820 (footnote omitted); *see also* discussion *infra* at pp. 7-8.

As suggested by the 1981 *Platoro* federal district court opinion above, in the absence of a governing statutory provision, ownership or possession of artifacts found on state land would be determined by the common law of finds applicable to personal property found on land and in the water. *See, e.g., United States v. Shivers*, 96 F.3d 120 (5th Cir. 1996); *Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 569 F.2d 330 (5th Cir. 1978); *Terry v. Lock*, 37 S.W.3d 202, 206 (Ark. 2001); *Corliss v. Wenner*, 34 P.3d 1100 (Idaho App. 2001); *Ritz v. Selma United Methodist Church*, 467 N.W.2d 266, 268-69 (Iowa 1991); *Morgan v. Wiser*, 711 S.W.2d 220, 221-23 (Tenn. App. 1985); *Schley v. Couch*, 284 S.W.2d 333, 334 (Tex. 1955). *See generally* Patty Gerstenblith, *Identity and Cultural Property: The Protection of Cultural Property in the United States*, 75 B.U.L. REV. 559, 587 (1995). Whether the state is entitled to ownership or possession depends on the particular artifacts and where they are found. Because you do not ask about a particular artifact or situation, we cannot provide a definite answer. We provide instead the general legal criteria for determining the ownership or possession of artifacts discovered on state public lands. The analysis differs depending upon whether the artifacts are found on *submerged* state lands, or whether they are found on *unsubmerged* state lands.

We first look at artifacts found on *submerged* lands. If an artifact is found submerged in water, it becomes subject to the law of admiralty, which comprises both the law of salvage and the law of finds. *See* Gerstenblith, *supra*, at 601. The law of finds will apply if the owner is deemed to have abandoned a ship and its contents; otherwise the law of salvage will apply. *See id.* at 602. The United States Constitution creates original federal jurisdiction over maritime and admiralty law whereby federal courts determine disposition of shipwrecks and associated objects. *See id.*

Under the federal maritime law of finds, title to abandoned property vests in the person who reduces that property to his or her possession regardless of where it is found. *See Treasure Salvors*, 569 F.2d at 337.[5] To determine the ownership of a shipwreck on the outer continental shelf — outside the territorial waters of the United States — the Fifth Circuit Court of Appeals in *Treasure Salvors* relied on the common law of finds rather than federal maritime salvage law and held that title to abandoned property vests in the person who reduces that property to his or her possession. *See id.* at 337. The court noted that whether salvage law or the law of finds "should be applied to property abandoned at sea is a matter of some dispute." *Id.* at 336. The court applied the law of finds, reasoning that because the application of salvage law was predicated on the "fiction" that the owner of the wrecked vessel was still in existence, it would be absurd to apply that law to a "vessel whose very location has been lost for centuries." *Id.* at 337.[6] In this case, the court affirmed the

---

[5] The Abandoned Shipwreck Act of 1987, 43 U.S.C. §§ 2101-2106 (1994), rejects the law of finds and salvage; grants title to abandoned and embedded shipwrecks to the United States; and transfers title directly to the state in whose waters the wreck is located. *See id.* §§ 2105, 2106. We do not consider this act given that you ask about artifacts removed from state lands prior to 1969.

[6] The court noted that the law of salvage does not contemplate a different result. *See Treasure Salvors*, 569 F.2d at 337. "Under either doctrine the property or an award for the value of the salvage efforts goes to the one who is first able to seize possession. The primary difference between the two doctrines is that under salvage law the claim of the

(continued...)

private salvage corporation's title to the shipwreck. *See id.* The court also rejected the United States' claim to the shipwreck as "successor to the prerogative rights of the King of England." *See id.* at 340-43.

There are two exceptions to the rule granting ownership of abandoned property to the "finder." The Eleventh Circuit Court of Appeals in *Klein v. Unidentified Wrecked & Abandoned Sailing Vessel*, 758 F.2d 1511 (11th Cir. 1985), followed *Treasure Salvors*, but applied the recognized exceptions to the common-law rule of finds to grant ownership of a shipwreck submerged beneath the waters of Biscayne National Park in Florida. The court explained:

> The common law of finds generally assigns ownership of the abandoned property without regard to where the property is found. Two exceptions to that rule are recognized: First, when the abandoned property is embedded in the soil, it belongs to the owner of the soil; [s]econd, when the owner of the land where the property is found (whether on or embedded in the soil) has constructive possession of the property such that the property is not "lost," it belongs to the owner of the land.

*Klein*, 758 F.2d at 1514. The *Klein* court concluded that both exceptions operated to give the United States ownership of the vessel rather than the private diver who had discovered the wreck. *See id.* at 1514-15. The court reasoned "[t]he ship is buried in the soil. The soil belongs to the United States as part of its national park system. . . .When the United States acquired title to the land from Florida in 1973, it also acquired title to the shipwrecks embedded in the soil." *Id.* Additionally, the court determined that:

> [s]ince 1975 the United States has had constructive possession of the wreck by virtue of a Preliminary Archeological Assessment of Biscayne National Monument prepared for the Park Service. This assessment noted the presence of an 18th century shipwreck in the area of the wreck. Furthermore, the United States has had the power and the intention to exercise dominion and control over the subject shipwreck. Thus, the United States has never legally lost the subject shipwreck . . . .

*Id.* (footnotes omitted).

The Fifth Circuit Court of Appeals has also recognized the "embedded" and "constructive possession" exceptions to the common-law rule of finds. In a 1996 decision, the Fifth Circuit Court of Appeals in *United States v. Shivers*, 96 F.3d 120 (5th Cir. 1996), without distinguishing between

---

[6](...continued)
finder of abandoned property is satisfied by proceeds from the sale of the property paid into court." *Id.* at 337 n.11.

objects found on submerged and unsubmerged lands, followed *Klein* and determined that in the absence of express or statutory title transfer, the United States owned metal tokens found by a private collector on an unsubmerged site located in the Angelina National Forest. *See Shivers*, 96 F.3d at 123. The court reasoned that the tokens "were buried in the soil of the [national forest]" and that "[a]s in *Klein*, this soil belongs to the United States, and with it the embedded tokens under the first exception to the federal common law of finds discussed in *Klein*." *Id.* (footnotes omitted).

In sum, former articles 147a, 147b, 147b-1, and 147b-2 of the Penal Code did not, as a matter of law, confer to the state ownership of artifacts removed from state lands prior to 1969. In the absence of a governing statutory provision, ownership or possession of artifacts found on state land before 1969 would be determined by the common law of finds applicable to personal property found on land and in the water. Ownership of artifacts discovered on or in submerged lands is determined by the federal maritime law of finds. Under the law of finds, an artifact found on submerged land is treated as abandoned property and ownership is assigned to the person who found it and first reduced it to possession. However, title to an artifact found embedded in the soil or over which artifact the owner of the land has constructive possession is given to the landowner. Accordingly, with respect to artifacts found on submerged state lands prior to 1969, the state, as owner of the land, would own submerged artifacts found embedded in the soil or over which the state had constructive possession; otherwise, the submerged artifacts would belong to the person who had found them.

We next turn to artifacts found on *unsubmerged* state lands. The common law of finds with respect to objects found on land is slightly different from the federal maritime law of finds and its application in Texas less clear. The common law divides found personal property into five classifications: abandoned, lost, mislaid, treasure trove, and embedded. *See Corliss v. Wenner*, 34 P.3d 1100, 1104 (Idaho App. 2001); *see generally* 1 AM. JUR. 2D *Abandoned, Lost and Unclaimed Property* §§ 1-14 (1994). The classification of the property determines its ownership or possession. *See Corliss*, 34 P.3d at 1103-04; *Ritz v. Selma United Methodist Church*, 467 N.W.2d 266, 268-69 (Iowa 1991). We consider each property classification.

- **Abandoned property** is property that the owner has discarded or voluntarily forsaken with the intention of terminating ownership, but without vesting ownership in another person. *See Terry v. Lock*, 37 S.W.3d 202, 206 (Ark. 2001); *see also Morgan v. Fox*, 536 S.W.2d 644, 652 (Tex. Civ. App.–Corpus Christi, 1976, writ ref'd n.r.e.) (essential element of abandonment is intention to abandon, which must be affirmatively established; non-use and passage of time alone do not constitute abandonment of vested rights). The finder who reduces abandoned property to possession acquires absolute title to it, with no duties to the original owner. *See Ritz*, 467 N.W.2d at 269; *see also Gregg v. Caldwell-Guadalupe Pick-up Stations*, 286 S.W. 1083, 1084 (Tex. Comm'n App. 1926, holding approved) (title to abandoned personal property vests in first person who reduces its possession).

- **Lost property** is property with which the owner has involuntarily and unintentionally parted through neglect, carelessness, or inadvertence and of whose whereabouts the owner has no knowledge. *See Terry*, 37 S.W.3d at 206; *see also Schley v. Couch*, 284 S.W.2d 333, 334

(Tex. 1955). The general rule is that the finder of lost property becomes the owner thereof as against the whole world except the true owner. *See Ritz*, 467 N.W.2d at 269.

- **Mislaid property** is property that the owner has intentionally set down in a place where the owner can again resort to it, but then forgets its location. *See Terry*, 37 S.W.3d at 207; *see also Schley*, 284 S.W.2d at 335. "Mislaid property is presumed to be left in the custody of the owner or occupier of the premises upon which it is found, and it is generally held that the right of possession to mislaid property . . . is in the owner or occupant of such premises" as against all persons except the true owner. *Schley*, 284 S.W.2d at 335-36 (citations omitted).

- **Embedded property** is personal property that has become part of the natural earth, and includes anything not made of gold or silver, or their paper equivalents, such as pottery, sunken wreck of a steamship, or a sack of gold-bearing quartz rock wholly or partially buried in the ground. *See Corliss*, 34 P.3d at 1104. Possession of embedded property is given to the owner of the land on which the property was found. *See id.*; *see also* Gerstenblith, *supra*, at 592 (Classification of personal property in this category "may depend on the extent to which it is buried in the soil" and may "arguably [be] misclassified as mislaid; the distinction is not significant, however, because possession of both mislaid and embedded property is given to the real property owner.").

- **Treasure trove** is a special category reserved exclusively for gold or silver coins, plates, bullion, and sometimes its paper money equivalents, found concealed in the earth or another private place. *See Terry*, 37 S.W.3d at 207. Treasure trove carries with it the idea of antiquity, *i.e.*, that the treasure has been concealed for so long as to indicate that the owner is probably dead or unknown. *See Corliss*, 34 P.3d at 1104. Notwithstanding that a treasure trove is not lost property — its essential character is that it shall have been concealed by the owner for safekeeping — it has historically been treated the same as lost property in granting the right to possession to the finder. *See id.*; *Morgan v. Wiser*, 711 S.W.2d 220, 221-23 (Tenn. App. 1985).

Texas state courts appear to have dealt only with two of the five "found" categories, *i.e.*, lost and mislaid property. Texas expressly does not recognize the "treasure trove" doctrine. *See Schley*, 284 S.W.2d at 334. Nor does it appear to recognize embedded property as a separate category. In *Schley v. Couch*, 284 S.W.2d 333 (Tex. 1955*)*, the Texas Supreme Court dealt with money found by the plaintiff buried under the defendant's garage. The court decided that the treasure trove doctrine would not apply, but that the case "should be governed by rules of law applicable to lost and mislaid property." *Id.* at 335. While stating that "[t]he character of the property [as lost or mislaid] is to be determined from all the facts and circumstances present in the particular case involving property found[,]" the court determined that the money in this case was mislaid, as a matter of law: the bills had been carefully placed in a jar and then buried in the ground, which indicated that "the owner did not part with them inadvertently, involuntarily, carelessly or through neglect." *Id.* at 336. The court then held that:

> Property which is found embedded in the soil under circumstances repelling the idea that it has been lost is held to have the characteristics of mislaid property. The finder acquires no rights thereto, for the presumption is that possession of the article found is in the owner of the locus in quo, and, accordingly it is held that the right to possession of such property is in the landowner.

*Id.* As the concurring opinion by Justice Calvert noted, the majority opinion failed to recognize the fourth category of found property — embedded property — but adopted the rule applicable to this category of property although classifying it as mislaid property. *See id.* at 337 (Calvert J., concurring).

In sum, under the common law of finds as construed by the Texas courts, ownership or possession of property found on unsubmerged land is dictated by its classification, based on all the facts and circumstances surrounding the found property, as either "mislaid" or "lost." If the property is classified as "lost" property, the person who found the property is given ownership. On the other hand, if it is classified as "mislaid," the person who owns the land where it was found is awarded possession. Accordingly, the state, as owner of the land, would own artifacts found on state lands prior to 1969 if they are classified as "mislaid" property. However, if the artifacts are classified as "lost" property, they would belong to the person who had found them.

You next ask: "Does the State of Texas own artifacts that have been removed from city, county, or other political subdivisions' land, either prior to the effective date of the amendment to the Antiquities Code in 1977, or subsequently?" Request Letter, *supra* note 1, at 2.

Based on our prior discussion, the state would not own artifacts removed, prior to the adoption of the Antiquities Code in 1969, from lands owned by political subdivisions of the state unless the artifacts were determined to be "lost" property and the state had "found" them. Under the statute as adopted in 1969 and as currently codified in the Natural Resources Code, the state owns artifacts found on lands belonging to political subdivisions of the state. *See* Act of Sept. 9, 1969, 61st Leg., 2d C. S., ch. 2, § 6, 1969 Tex. Gen. Laws 98, 100; Act of May 24, 1977, 65th Leg., R.S., ch. 871, §§ 1.001, 191.092, 1977 Tex. Gen. Laws 2345, 2347, 2687 (nonsubstantive codification); TEX. NAT. RES. CODE ANN. §§ 191.091, .092(a), .093 (Vernon 2001);[7] *see also* Gerstenblith, *supra*, at 599 ("[V]irtually every state government has declared its right to ownership and control of any archaeological objects found on publicly owned or controlled land."). You do not contend that this provision of the statute is facially unconstitutional. And, we must presume, without "clear and certain" evidence to the contrary, that it is constitutional. *See Gen. Servs. Comm'n v. Little-Tex Insulation Co. Inc.,* 39 S.W.3d 591, 598 (Tex. 2001); *McKinney v. Blankenship,* 282 S.W.2d 691, 697 (Tex. 1955); *Rooms With a View, Inc. v. Private Nat'l Mortgage Ass'n, Inc.,* 7 S.W.3d 840, 845

---

[7] *See supra,* note 3.

(Tex. App.–Austin 1999, pet. denied); *Salvatierra v. VIA Metro. Transit Auth.*, 974 S.W.2d 179, 182 (Tex. App.–San Antonio 1998, pet. denied); *see also* TEX. GOV'T CODE ANN. § 311.021(1) (Vernon 1998) (stating that legislature is presumed to have intended to comply with state and federal constitutions). Whether the state's claim of ownership in a particular situation would violate a state constitutional provision, we cannot say. *See, e.g., Tex. Antiquities Comm. v. Dallas County. Coll. Dist.*, 554 S.W.2d 924, 930 (1977) ("One agency of the state does not possess powers to divest vested property and contract rights of another state agency" unrestrained by particular constitutional prohibitions.).

We understand that you were under the mistaken impression that the state did not assert ownership over artifacts located on or in lands belonging to political subdivisions of the state until 1977. You aver that the Antiquities Code was "amended" in 1977 "to claim objects under land 'belonging to the State of Texas or to any county, city, or political subdivision of the state . . . .'" Request Letter, *supra* note 1, at 1; *see* Act of May 24, 1977, 65th Leg., R.S., ch. 871, § 191.092, 1977 Tex. Gen. Laws 2345, 2687. Yet, the state asserted ownership over such artifacts as of the effective date of the Antiquities Code of 1969. *See* Act of Sept. 9, 1969, 61st Leg., 2d C.S., ch. 2, § 6, 1969 Tex. Gen. Laws 98, 100. As indicated earlier, section 6 of the Antiquities Code of 1969 provided that:

> All other sites, objects, buildings, artifacts, implements, and locations of historical, archaeological, scientific, or educational interest, including but expressly not limited to, those pertaining to prehistoric and historical American Indian or aboriginal campsites, dwellings, and habitation sites, their artifacts and implements of culture, as well as archeological sites of every character *that are located in, on or under the surface of any lands belonging to the State of Texas or by any county, city, or political subdivision of the state are hereby declared to be State Archaeological Landmarks and are the sole property of the State of Texas . . . .*

*See* Act of Sept. 9, 1969, 61st Leg., 2d C.S., ch. 2, § 6, 1969 Tex. Gen. Laws 98, 100 (emphasis added). The 1977 codification of the Antiquities Code was nonsubstantive. *See* Act of May 24, 1977, 65th Leg., R.S., ch. 871, § 1.001, 1977 Tex. Gen. Laws 2345, 2347.

Finally, you ask: "If it is determined that the State of Texas owns artifacts that were removed from State and/or other governmental lands prior to the effective date of the Antiquities Code of 1969, is the [Texas Historical Commission] legal custodian of items not described in that law?" Request Letter, *supra* note 1, at 2. We conclude that the Texas Historical Commission is the legal custodian of artifacts removed prior to 1969 from state public lands if they are recovered and retained by the state. Section 191.051(a) of the Natural Resources Code provides that: "The committee is the legal custodian of all items described in this chapter that have been recovered and retained by the State of Texas." TEX. NAT. RES. CODE ANN. § 191.051(a) (Vernon 2001). Under the statute, the "committee" is the Texas Historical Commission. *See id.* § 191.003(1); *see also* Act of

May 8, 1995, 74th Leg., R.S., ch. 109, § 27, 1995 Tex. Gen. Laws 909, 919 (abolishing Antiquities Committee and transferring its powers and duties to Texas Historical Commission). Section 191.051 is very broad. It covers all archaeological, historical, or educational items recovered and retained by the state. *See* TEX. NAT. RES. CODE ANN. §§ 191.091, .092 (Vernon 2001) (describing sites and items covered by this chapter). While the state cannot pursuant to the Antiquities Code assert ownership, as a matter of law, over artifacts discovered prior to the code's effective date, we see no reason why the commission is precluded from acting as the legal custodian of such artifacts described by chapter 191 to the extent recovered and retained by the state under the common law of finds or otherwise.

## S U M M A R Y

Whether the state owns artifacts removed from state lands prior to the adoption of the Antiquities Code in 1969 depends on the particular artifacts and where they were found. With respect to artifacts found *on submerged state lands*, the state, as owner of the land, would own artifacts found buried in the soil or over which the state had constructive possession; otherwise, the artifacts would belong to the person who had found them. With respect to artifacts found *on unsubmerged state lands*, the state, as owner of the land, would own artifacts classified as "mislaid" property; however, artifacts classified as "lost" property would belong to the person who had found them. The state would not own artifacts removed prior to 1969 from lands owned by political subdivisions of the state unless the artifacts were determined to be "lost" property and the state had "found" them. Under the Antiquities Code, the state owns artifacts removed subsequent to its effective date from lands belonging to political subdivisions of the state. Additionally, the Texas Historical Commission is the legal custodian of artifacts removed from state public land prior to 1969 to the extent they are recovered and retained by the state. Finally, former articles 147a, 147b, 147b-1, and 147b-2 of the Penal Code did not, as a matter of law, confer to the state ownership of artifacts removed from state lands prior to 1969.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee