Bowen *v.* Hooker.

5-3106                                     372 S. W. 2d 257

Opinion delivered November 18, 1963.

*J. E. Still,* for appellant.

*Boyd Tackett, LeRoy Autrey,* for appellee.

Frank Holt, Associate Justice. The dispute in this case concerns a one acre tract of land on which is located a cemetery known as the "Bowen Graveyard." The appellees, as the heirs and relatives of loved ones buried in this cemetery, brought this suit as a class action to establish the right to use "Bowen Graveyard" as a public cemetery. The appellants denied that a public cemetery existed and, also, any interference to appellees or the public as to existing graves.

Appellants bring this appeal from a decree favorable to the position of appellees as to a part of this one

acre. For reversal appellants contend that (1) they are the owners of the legal title to this portion by virtue of a 1946 deed and (2) that appellees have abandoned any right to use it for burial purposes.

In 1913 A. M. Bowen and his wife, parents of appellant W. Ray Bowen, conveyed by warranty deed to the Trustees of the Pisgah Methodist Church one acre of land on which existed a cemetery "* * * known as the Bowen Graveyard." In 1946 the Trustees of the Pisgah Methodist Church conveyed by quitclaim deed to the appellants this same one acre tract of land "* * * known as the Bowen Graveyard." In 1947 this cemetery was the subject of an action instituted in Pike County Chancery Court against appellants with reference to appellees' rights of ingress and egress. There was no formal decree rendered in the case. The docket notation recites that appellants were required to allow appellees access "* * * to cemetery until such time as a road can be constructed * * *."

From 1915 until 1962 a fence enclosed the east half of this one acre tract. It is undisputed that the fence was maintained in this same location from 1915 until 1962 when the fence was removed by appellants from the south boundary of this enclosed portion. The south fence was moved northward and relocated. As a result, the new south boundary fence then enclosed about one-half of the area previously enclosed by fence. All of the graves were contained in this newly constricted area of one-fourth acre. Before relocation of the fence by appellants the south portion of the fenced area was utilized to some extent by use of the trees for shade during funeral services. This south portion, where no graves are found, received some care and attention from appellees and the community. There have been no burials in the cemetery since 1950. Several witnesses testified that since the north portion was almost filled to capacity they desired and expected to be buried in this south portion of the cemetery and, thus, near their loved ones.

In rendering his opinion, the Chancellor divided the one acre into three parts. Tract No. 1: The area now

enclosed by fence, or that portion containing the graves [approximately one-fourth acre]. Tract No. 2: That part of the area from which appellants removed the fence and containing no graves but previously enclosed with Tract No. 1 [approximately one-fourth acre]. This is the "disputed area" which is the basis for this appeal. Tract No. 3: The remaining part of the one acre tract which was never enclosed [approximately one-half acre]. The Chancellor found that the appellees have no right or interest in Tract No. 3 and awarded it to appellants since it is undisputed that it was never enclosed nor used for cemetery purposes and that since 1915 until the present time it has been used by the appellants, or their predecessors in title, for agricultural purposes. The court further found that the area represented by tracts one and two is a public cemetery and that any legal title which appellants hold from the Church was subject to the easement that accrues from a public cemetery and that appellees have never abandoned their rights to such cemetery. Accordingly, the Chancellor ordered the appellants to remove the new fence and relocate it where it existed originally so that the enclosure, as restored, would contain approximately one-half acre. The appellants were also enjoined from interfering with the appellees' and the public's right to use "Bowen Graveyard" as a cemetery. On appeal the appellants question only the court's disposition of Tract No. 2. There is no cross-appeal by appellees.

We do not agree with appellants' contention that they are the owners in fee simple absolute of this disputed portion of land, Tract No. 2, by virtue of a 1946 quitclaim deed. A purchaser of land is charged with notice that such has been dedicated to public use for cemetery purposes where there are visible signs and suitable markings to call his attention to the existence of such a cemetery and he takes it subject to such public rights. In *Roundtree* v. *Hutchinson*, (Wash.) 107 P. 345, the court said:

"It is true that there are no reservations in the deeds of appellant's chain of title, but both he and his

grantor, Wooley, had notice of the existence of the burying ground, and purchased subject to the rights the public had acquired in the property.''

Also see *United Cemeteries* v. *Strother,* (Mo.) 61 S. W. 2d 907 and *Heiligman* v. *Chambers,* (Okla.) 338 P. 2d 144.

In the case at bar, however, in addition to appellants' knowledge of the existence of the cemetery, it is to be noted that the warranty deed by appellant's father in 1913 clearly stated that the conveyance of the property in question was for cemetery purposes and described it as the ''Bowen Graveyard.'' Also, in 1946 the quitclaim deed from the Pisgah Methodist Church Trustees to the appellants referred to the one acre being conveyed as the ''Bowen Graveyard.'' It cannot be said that appellants purchased this property without knowledge of the existence of this cemetery.

From our review of the cases in other jurisdictions, since we find none applicable in our own, we think the rule that a purchaser of land takes it subject to any dedication and use for cemetery purposes is best stated in the case of *State* v. *Forest Lawn Lot Owners Association,* (Tex.) 254 S. W. 2d 87. There the court said:

''* * * The substance of what is said by the courts in all the cited cases is that property once dedicated to cemetery purposes and in use as a burial ground for the dead *may not be sold,* either voluntarily or through judicial proceedings, *in such manner as to interfere with the uses and purposes to which it has been dedicated and devoted.''* [Emphasis added.]

See also 10 Am. Jur., Cemeteries, § 6, p. 490; 14 C. J. S., Cemeteries, § 25, p. 84; 130 A.L.R. 264 and 75 A.L.R. 2d 599.

We think the Chancellor was correct in his holding that appellants' legal title is subject to the appellees' and the public's use of the Bowen Cemetery.

Appellants next contend that since no graves exist in the south half of the originally enclosed portion the

appellees have abandoned it for cemetery purposes. We do not agree. It is undisputed that this portion was enclosed by fence from 1915 until the appellants removed the fence therefrom in 1962 and that such portion has been used for auxiliary purposes in conducting burial ceremonies. Further, the evidence indicates some maintenance by appellees and that relatives and loved ones of those interred in the north portion desire burial in Tract No. 2, the area in dispute. The appellants attempt to refute this proposed future use since there have been no burials in the cemetery since 1950.

The general rule is that a cemetery is never abandoned nor loses its character and identity as such until the bodies reposing there are removed by friends or relatives or by proper public authority and mere disuse or the lack of continued interments does not constitute abandonment. It continues subject to use as a cemetery so long as the burials there awaken sacred memories in the minds of the living. 10 Am. Jur., Cemeteries, § 36, p. 512; 14 C.J.S. § 22, p. 82. Also see *Wooldridge* v. *Smith*, (Mo.) 147 S. W. 1019 and *Currier* v. *Woodlawn Cemetery*, (N. Y.) 90 N. E. 2d 18.

In *Morgan et al.* v. *Collins School House*, (Miss.) 133 So. 675, the court said:

"* * * The custom of ages has been for people to bury their relatives together or in the same cemetery as far as reasonably possible and giving a privilege to bury should be understood as carrying this right."

Although there are no graves in Tract No. 2, the south portion, we think that from the facts in this case it is unquestionably a part of the cemetery as a whole.

In *County Board of Commissioners for Clarendon County* v. *Holladay, et al.*, (S. C.) 189 S. E. 885, the court had before it the question as to whether the cemetery was confined to that area actually occupied by graves. In that case the court said:

"* * * A cemetery includes not only lots for depositing the bodies of the dead, but also avenues, walks and grounds for shrubbery and ornamental purposes.

All must be regarded alike as consecrated to a public and sacred use.''

We think that the south portion, Tract No. 2, was dedicated and consecrated to the sacred use of a public cemetery.

We agree with the Chancellor that the entire area enclosed by the fence from 1915 until 1962, Tracts No. 1 and No. 2, constituted a public cemetery and that the appellees are entitled to the unrestricted use thereof as such.

Affirmed.