Dr. Ann M. Early, State Archeologist Dr. Tom Green, Director Arkansas Archeological Survey Coordinating Office 2475 North Hatch Avenue Fayetteville, Arkansas 72704
Dear Drs. Green and Early:
I am writing in response to your request for an opinion concerning the ownership of grave goods or "burial furniture" that might inadvertently be unearthed during construction projects of the United States Corps of Engineers within the State of Arkansas. You reference A.C.A. §§ 13-6-401
to-409 (Repl. 2000 and Supp. 2005), and ask whether Arkansas law covers this issue, or whether an amendment to current law is needed to address the problem.
Specifically, in pertinent part, you recite the following information relating to your request:
 We are requesting an opinion from the Attorney General's Office regarding interpretation of the Arkansas Unmarked Burial Act, Act 753 of 1991, amended in 1999, now Arkansas Code 13-6-401
through 409.[1] Our specific concern is in the disposition of grave goods that are associated with human burial skeletal remains, or that are found in a grave where the human remains have deteriorated. These latter are often referred to as unassociated grave goods. Questions have been raised by the U.S. Corps of Engineers, Memphis District, regarding their interpretation of the Arkansas law in the context of Corps construction projects in Arkansas.
 The U.S. Corps of Engineers is required to prepare for the possibility of encountering archeological sites, including unmarked cemeteries, during their construction projects in Arkansas. Two of these large projects are on the Grand Prairie and Bayou Meto landforms. In drafting an agreement between the Memphis Corps and American Indian Tribes and Nations that have an interest in Arkansas sites, the Corps has proposed that if human graves are inadvertently found during their construction projects, one option will be to disinter the deceased in accordance with the Unmarked Burial Act provisions, to consult with potential descendants with regard to the disposition of the human remains, and to give any grave goods to the landowner if he/she wishes to have them.
 We believe this violates the intent of the Unmarked Burial Act, and flies in the face of both custom and expectations of any racial or ethnic group in the state, but we cannot find language in the Arkansas Code that specifically addresses this point of ownership. We believe that we need clarification about the legal prerogatives of individuals with unmarked cemeteries (and marked cemeteries as well) on their property versus potential descendants of persons in those cemeteries and the objects buried with them. . . .
Your question is "whether Arkansas law actually covers this situation, or whether we need to seek amendments to current law to address this problem."[2]
 RESPONSE
In my opinion the issue is not clearly addressed by Arkansas statutes or case law. Although the relevant Arkansas statutes are fairly clear concerning the disposition of "human skeletal burial remains" and "artifacts" uncovered on private land, the statutes do not clearly address the proper disposition of "burial furniture" as defined in those statutes. The state statutory scheme is silent on this issue. Failing any applicable statute governing the disposition of such burial furniture, reference to the common law of Arkansas may be appropriate to determine ownership. Unfortunately, I can find no clearly controlling Arkansas common law doctrine applicable to the ownership of grave goods uncovered on private lands. In my opinion, therefore, as you have suggested, legislative clarification is warranted.
As an initial matter, I understand your question to concern only the "grave goods" or objects placed with human remains at burial. I assume your question does not concern the ownership or proper disposition of actual human remains or any artifacts not placed in relation to burial sites. Indeed, as discussed below, the disposition of those items is clearly addressed by Arkansas law. In addition, you have not relayed any particular facts surrounding the Corps of Engineers' projects at issue. I am not empowered as a fact-finder in the issuance of Attorney General opinions. Because your main concern appears to be the Corps of Engineers proposal to give any such grave goods to the "landowner," however, I assume that your question applies to such objects inadvertently found onprivately-owned land that is the subject of a Corps of Engineers' project.
Native American objects of this sort found on federal land[3] are clearly governed by the "Native American Graves Protection and Repatriation Act" or "NAGPRA," codified at 25 U.S.C. §§ 3001 to-3013.See also, 43 C.F.R. §§ 10.1 to 10.17. As stated in Yankton Sioux Tribe v.U.S. Army Corps of Engineers, 209 F.Supp.2d 1008 (D.S.D. 2002):
 Under NAGPRA, ownership or control of Native American human remains and associated funerary objects rests with the lineal descendants of the Native American who has left the remains or funerary objects. See 25 U.S.C. § 3002(a)(1). In cases in which the lineal descendants cannot be ascertained, or which involve unassociated funerary objects, sacred objects, and objects of cultural patrimony, NAGPRA develops a scheme for determining which tribe[4] has the closest relationship, and hence the strongest entitlement, to the items, based on geographic and cultural factors. See 25 U.S.C. § 3002(a)(2). The regulations require federal agency officials to determine who is entitled to custody of the cultural items, and set forth procedures for the notification of potential lineal descendants and interested tribes. See 43 C.F.R. § 10.6.
 * * * In addition to intentional excavation and removal, NAGPRA governs the inadvertent discovery of Native American cultural items on federal or tribal lands:
 * * * As with Native American cultural items intentionally excavated or removed, cultural items that are inadvertently discovered are subject to the ownership and control provisions of 25 U.S.C. § 3002(a).
Id. at 1016, 1017. "NAGPRA" regulations provide for a "Plan of Action" or "POA" to manage Native American cultural items that may be encountered during the project. See 43 C.F.R. § 10.3.
Ownership of non-Native American archeological resources found onfederal land apparently continues to be dictated by the earlier adopted provisions of the "Archeological Resources Protection Act," or ("ARPA"),16 U.S.C. § 470aa to § 470mm, which requires any resources excavated or removed to "remain the property of the United States."16 U.S.C. § 470cc(b)(3). See also 43 C.F.R. § 7.13. This law, like "NAGPRA," does not apply to private lands.
As stated above, I interpret your question as applying to grave goods found on private, rather than federal lands. I will thus assume that the "ownership" provisions of NAGPRA and ARPA are not implicated by your question.
Other federal laws, however, govern the process to be undertaken by federal agencies even on private land. One primary law is the National Historic Preservation Act or "NHPA," which requires what is commonly referred to as a "Section 106 review." This law requires federal agencies to consider the effect of their projects on places included in or "eligible for inclusion" in the National Register of Historic Places.16 U.S.C. § 470f. See also 36 C.F.R. § 800 et seq. Although this law might not at first blush appear to be applicable to the facts at hand, it has been stated that "NHPA created most of the institutions that are central to the historic preservation part of [cultural resource management] today." Thomas King, CULTURAL RESOURCE LAW AND PRACTICE (2d. ed.) at 22. The regulations implementing it require a pre-project "Section 106" review if the activity is "the type of activity that has the potential to cause effects on historic properties."36 C.F.R. 800.3(a). (Emphasis added.) Although this law, and its applicable regulations, allows the entry of "memorandums of agreements" or "programmatic agreements" to govern the undertaking, it does not conclusively dictate ownership of burial items uncovered on private land. See C.F.R. § 800.6.
Another federal statutory scheme of potential applicability, which apparently applies to public or private land, is 16 U.S.C. §§ 469
to-469c-1, originally titled the "Reservoir Salvage Act of 1960" and amended by unnamed legislation commonly called the "Moss-Bennett Act," the "Archeological Data Preservation Act of 1974" ("ADPA"), or the "Archeological and Historic Preservation Act" ("AHPA"). The purpose of this law is to "provid[e] for the preservation of historical and archeological data (including relics and specimens) which might otherwise be irreparably lost or destroyed" as a result of dam construction by an agency of the United States or by "any alteration of the terrain caused as a result of any Federal construction project or federally licensed activity or program." These statutes provide methods for the preservation of such specimens (16 U.S.C. § 469a-1), but do not definitively address the ownership of any objects unearthed, stating only that: "The Secretary shall consult with any interested Federal and State agencies, educational and scientific organizations, and private institutions and qualified individuals, with a view to determining the ownership of and the most appropriate repository for any relics and specimens recovered as a result of any work performed as provided for in this section." Id. at § 469a-3. Although this federal statute appears to be the controlling one with regard to the facts giving rise to your question, I should note that it has been called "something of an anachronism, since it is largely redundant with Section 106 review." Thomas King, CULTURAL RESOURCE LAW AND PRACTICE (2d Ed.) at 256. In any event, this law and the other federal laws and regulations mentioned, dictate the process to be used to determine ownership of the grave goods about which you inquire. In this regard, you have not indicated, and I am therefore uncertain, whether the agreement you mention is a "Plan of Action" or "POA" under NAGPRA, a "memorandum of agreement" ("MOA"), or a "programmatic agreement" under NHPA, or some other form of agreement made pursuant to federal law or regulations.[5] I thus cannot conclusively determine the precise provisions of any applicable federal law. Although federal law dictates the process by which ownership may be determined, it does not appear to dictate the ownership of grave goods when the land at issue is not owned or controlled by the United States.[6] Your question focuses on state law, which is now where our discussion must lead.
To the extent state law is applied, the relevant statutes in Arkansas are found, as you note, at A.C.A. §§ 13-6-401 to-409 (Repl. 2003 and Supp. 2005) and were first adopted in 1991. The legislative intent of this law is found at A.C.A. § 13-6-401, which provides that:
 (a) It is a declaration and statement of the General Assembly's intent that all human burials and human skeletal burial remains shall be accorded equal treatment and respect for human dignity without reference to their ethnic origins, cultural backgrounds, religious affiliations, or date of burial.
 (b) The provisions of this subchapter shall apply to all human burials or human skeletal burial remains found on or in all public or private lands or waters of Arkansas.
The statutes first define the applicable terms, as follows:
 (1) "Artifacts" means arrowheads, other bone and stone tools, pottery, pottery fragments, china, metal objects or other material objects made by Native American settlers, or other residents of Arkansas, which were left or lost in or on the ground, except those items which were placed in direct association with human skeletal burial remains or burial furniture as defined in this subchapter;
 (2) "Burial furniture" means any items which were placed with human remains at the time of burial or in apparent intentional association with the burial and would include burial markers, items of personal adornment, casket and casket hardware, stone and bone tools, pottery vessels, or other similar objects or materials;
 (3) "Burial grounds" means any place where human skeletal remains are or have been buried;
 (4) "Desecration" manes the intentional, willful, or knowing removal or disturbance or human skeletal burial remains or burial furniture which was placed with a buried human body, or treating such human skeletal burial remains in an irreverent and contemptuous manner; and
 (5) "Human skeletal burial remains" means the calcified portion of a human body which remains after the flesh has decomposed.
I assume your question primarily focuses on "burial furniture" as defined above, and not "human skeletal burial remains" or "artifacts," the latter of which is specifically defined as excluding "burial furniture."
The substantive provisions of the subchapter in question accomplish several objectives. The buying, selling, or bartering of "human skeletal burial remains" or their associated "burial furniture" is prohibited and subjected to a criminal penalty. A.C.A. § 13-6-406(a). ("Artifacts" are excluded from this prohibition.) A.C.A. § 13-6-406(b) and (c).[7]
Displaying human skeletal burial remains is criminalized. A.C.A. §13-6-407. "Desecration" of burial grounds and associated burial furniture is criminalized. An exception is made, however, for "the disturbance of human skeletal burial remains or burial furniture by landowners or agricultural tenants as a consequence of agricultural activity or any other activity unless the landowner or agricultural tenant knowingly desecrates or knowingly allows desecration of a cemetery or burial site." A.C.A. § 13-6-408(c) (Supp. 2005). If human remains are "exhumed for relocation," then at the request of a direct descendant, specific church, or federally recognized tribal group, and upon the providing of evidence of descent or affiliation, the human remains shall be conveyed to such person or entity. A.C.A. § 13-6-404. This last-cited section, however, is restricted to human remains and does not address "burial furniture."
The applicable subchapter is fairly clear as to the disposition of "human skeletal burial remains" and the treatment of "artifacts." "Human skeletal burial remains" are transferred to the descendant, church or federally-recognized tribal group, depending on the evidence produced. "Artifacts" may be collected by landowners (see A.C.A. § 13-6-406(b) and (c) (n. 1, supra), and it is not unlawful to buy, sell, or barter such artifacts. Id. The subchapter is less clear with regard to the disposition of "burial furniture." It is clear that it is unlawful to buy, sell or barter "associated burial furniture." A.C.A. §13-6-406(a).[8] Otherwise, the disposition or ownership of these types of objects is not specifically addressed in the statutes.
Some evidence of legislative intent as to the disposition of these items may be gleaned from the provisions set out in A.C.A. § 13-6-403, which provides as follows:
 (a) The public has a right to the knowledge to be derived and gained from the scientific study of human skeletal burial remains and burial furniture.
 (b) Therefore, when justified by "A State Plan for the Conservation of Archeological Resources in Arkansas" as promulgated by the State Archeologist and the State Historic Preservation Officer, the investigation, excavation, removal, and analysis of human skeletal burial remains and burial furniture is authorized and, if done, must be carried out with the consent of the landowner and consul[t]ation with the appropriate tribe, if identifiable, and under the direction of archeologists employed by the state or the United States Government or by archeologists meeting the United States Department of Interior's professional qualifications standards found in the current Code of Federal Regulations.
This statute expresses a public interest in burial furniture. It addresses the excavation and removal of human skeletal burial remains and burial furniture. Any such removal must be carried out "under the direction of archeologists employed by the state or the United States Government or by archeologists meeting the United States Department of Interior's professional qualifications standards found in the current Code of Federal Regulations" and only with the consent of the landowner and in consultation with the appropriate tribe, if identifiable. These provisions suggest that "burial furniture" is not the type of item subject to the sole dominion of the landowner.
A question may arise, however, as to whether this statute is applicable when burial furniture is inadvertently discovered during the course of non-archeologically related earth-moving activities on private land by or with the consent of the landowner. In my opinion the statute above is broad enough to cover that occurrence. The applicable subchapter clearly applies on both public and private lands. A.C.A. § 13-6-401(b). Subsection (a) of A.C.A. § 13-6-403 expresses a "public interest" in the knowledge to be gained from the scientific study of burial furniture. No distinction is made in subsection (a) between burial furniture intentionally excavated and burial furniture inadvertently unearthed. It is therefore reasonable to infer that this "public interest" attaches even to the inadvertent discovery of burial furniture on private land. The public interest in such burial furniture is protected by having only the authorized officials listed above direct any excavation and removal of the objects. A.C.A. § 13-6-406(b). This of course must be undertaken with the consent of the landowner and in consultation with the appropriate tribe, if identifiable. In my opinion, therefore, any excavation or removal of such items may only be undertaken under the direction of the authorized officials listed above, with consent of the landowner, and in consultation with the appropriate tribe. See also, Op. Att'y Gen. 91-112 ("If authorized . . . the actual investigation, excavation, removal, and analysis of . . . burial furniture must be carried out under the direction of archeologists employed by the State, or U.S. Government, or by archeologists meeting the U.S. Department of the Interior's professional qualification standards").[9]
In my opinion this conclusion is not inconsistent with A.C.A. §13-6-408(c), which creates an exception to the crime of "desecration" for certain inadvertent disturbances of burial furniture ("Exempted from this section is disturbance of human skeletal burial remains or burial furniture by landowners or agricultural tenants as a consequence of agricultural activity or any other activity unless the landowner knowingly desecrates or knowingly allows desecration of a cemetery or burial site"). This is the only provision of the applicable subchapter that clearly addresses the inadvertent discovery of human remains and burial furniture. It is not a crime for landowners and agricultural tenants to inadvertently "disturb" such human remains and burial furniture. In my opinion, however, the express language of that subsection does not specifically sanction or authorize such persons to actually excavate or remove such items, once inadvertently "disturbed." Although it is not a criminal offense for such a landowner or agricultural tenant to inadvertently "disturb" such objects, this is not tantamount to an authorization for the landowner or tenant to remove, excavate, and retain such items. The public interest mentioned above attaches to any such items. In my opinion, therefore, the excavation and removal of such items, must, according to A.C.A. § 13-6-403 above, be undertaken only under the direction of the authorized officials mentioned in that subsection.
Although the discussion above, and any applicable federal law (see discussion, supra), may resolve any issues as to the proper procedure for the excavation or removal of burial furniture, questions nonetheless remain concerning the ownership of any items excavated. The applicable subchapter is simply silent on this point.[10] Where the statutory scheme is silent, resort to the common law of Arkansas is required.[11] See e.g., District No. 21 United Mine Workers or Americav. Bourland, 169 Ark. 796, 277 S.W. 546 (1925) ("In the absence of a statute on the subject we are bound by the rule of the common law. . ."). See also, A.C.A. § 1-2-119 (Repl. 1996) (adopting English common law not inconsistent with the U.S. or Arkansas Constitutions or law).
The Arkansas Supreme Court most recently discussed the common law relating to "found property" in Terry v. Lock, 343 Ark. 452,37 S.W.3d 202 (2001). In Terry, the court upheld a trial court's finding that $38,200 of dusty currency concealed behind ceiling tiles in a motel was "mislaid" property and therefore belonged to the motel owner as against a claim by the independent contractors who found it while renovating the motel. In order to understand the distinctions between various kinds of found property, it is necessary to quote from that opinion at some length:
 We have not previously analyzed the various distinctions between different kinds of found property but those distinctions have been made in the common law, and have been analyzed in decisions from other jurisdictions. The Supreme Court of Iowa has explained that "under the common law, there are four categories of found property: (1) abandoned property, (2) lost property, (3) mislaid property, and (4) treasure trove." Benjamin v. Linder Aviation, Inc., 534 N.W.2d 400 (Iowa 1995); see also Jackson v. Steinberg, 186 Or. 129, 200 P.2d 376 (1948). "The rights of a finder of property depend on how the found property is classified." Benjamin, supra. The character of the property should be determined by evaluating all the facts and circumstances present in the particular case. See Schley v. Couch, 284 S.W.2d 333 (Tex. 1955).
 We next consider the classification of found property described in Benjamin, supra.
 A. Abandoned property
 Property is said to be "abandoned" when it is thrown away, or its possession is voluntarily forsaken by the owner, in which case it will become the property of the first occupant; or when it is involuntarily lost or left without the hope and expectation of again acquiring it, and then it becomes the property of the finder, subject to the superior claim of the owner. Eads v. Brazelton, 22 Ark. 499 (1861); see also Crosston v. Lion Oil Refining Co., 169 Ark. 561, 275 S.W. 899 (1925).
 B. Lost property
 "Lost property" is property which the owner has involuntarily parted with through neglect, carelessness, or inadvertence, that is, property which the owner has unwittingly suffered to pass out of his possession, and of whose whereabouts he has no knowledge. Property is deemed lost when it is unintentionally separated from the dominion of its owner. Popularly, property is lost when the owner does not know, and cannot ascertain, where it is, the essential test of lost property is whether the owner parted with the possession of the property intentionally, casually or involuntarily; only in the latter contingency may it be lost property. Property is not "lost" unless the owner parts with it involuntarily and unintentionally, and does not, at any time thereafter, know where to find it. A loss is always involuntary; there can be no intent to part with the ownership of lost property. [Citations omitted.]
 The finder of lost property does not acquire absolute ownership, but acquires such property interest or right as will enable him to keep it against all the world but the rightful owner. This rule is not affected by the place of finding, as the finder of lost property has a right to possession of the article superior to that of the owner or occupant of the premises where it is found. [Citations omitted.]
 C. Mislaid property
 "Mislaid property" is that which is intentionally put into a certain place and later forgotten. The place where money or property claimed as lost is found is an important factor in the determination of the question of whether it was lost or only mislaid. But where articles are accidentally dropped in any public place, public thoroughfare, or street, they are lost in the legal sense. In short, property will not be considered to have been lost unless the circumstances are such that, considering the place where, and the conditions under which, it is found, there is an inference that it was left there unintentionally. [Citations omitted.]
 A finder of mislaid property acquires no ownership rights in it, and, where such property is found upon another's premises, he has no right to its possession, but is required to turn it over to the owner of the premises. This is true whether the finder is an employee or occupier of the premises on which the mislaid article is found or a customer of the owner or occupant.
 The right of possession, as against all except the true owner, is in the owner or occupant of the premises where the property is discovered, for mislaid property is presumed to have been left in the custody of the owner or occupier of the premises upon which it is found. The result is that the proprietor of the premises is entitled to retain possession of the thing, pending a search by him to discover the owner, or during such time as the owner may be considered to be engaged in trying to recover his property. When the owner of premises takes possession of mislaid personal property left by an invitee he becomes a gratuitous bailee by operation of law, with a duty to use ordinary care to return it to the owner.
 The finder of mislaid property must turn it over to the owner or occupier of the premises where it is found; it is the latter's duty to keep mislaid property for the owner, and he must use the care required of a gratuitous bailee for its safekeeping until the true owner calls for it. As against everyone but the true owner, the owner of such premises has the duty to defend his custody and possession of the mislaid property, and he is absolutely liable for a misdelivery. [Citations omitted.]
 D. Treasure trove
 According to the common law, treasure trove is any gold or silver in coin, plate, or bullion, whose owner is unknown, found concealed in the earth or in a house or other private place, but not lying on the ground. Where the common-law treasure trove doctrine has been applied to determine the ownership of a find, property considered as treasure trove has included gold or silver coin, and its paper representatives, buried in the earth or hidden in some other private place, including a mattress, a cabinet sink, and a piano. It is not essential to its character as treasure trove that the thing shall have been hidden in the ground; it is sufficient if it is found concealed in other articles, such as bureaus, safes, or machinery. While, strictly speaking, treasure trove is gold or silver, it has been held to include the paper representatives thereof, especially where found hidden with those precious metals. [Citations omitted.]
 "Treasure trove carries with it the thought of antiquity; to be classed as treasure trove, the treasure must have been hidden or concealed so long as to indicate that the owner is probably dead or unknown." [Citation omitted.] "Title to treasure trove belongs to the finder, against all the world except the true owner." [Citations omitted.]
Id. at 460 to-463. See also, Franks v. Pritchett, 88 Ark. App. 243,197 S.W.3d 5 (2004) ($14,200 in dresser drawer of hotel found by hotel resident was "mislaid" property and belonged to hotel owners).
It is difficult to characterize items placed in connection with a burial or grave as "abandoned," "lost," or "mislaid." Items placed with the deceased at burial are not "thrown away" and the owner does not "voluntarily" forsake possession. Such items are not "lost" because the owner has not "involuntarily" parted with them through neglect or carelessness, and the items are not "mislaid" because although the items are intentionally placed, the "owner" has not "forgotten" them. In addition, the items are not "treasure trove," because that category only applies to money. See e.g., Zahra S. Karinshak Comment: Relics of thePast — To Whom Do They Belong? The Effect of an ArchaeologicalExcavation on Property Rights, 46 Emory L.J. 867, 895 (Spring, 1997) ("It is most appropriate to view artifacts as a separate category of find because they do not meet the traditional categories of being mislaid, lost, or treasure trove"). See also, Gene A. Marsh, Walking theSpirit Trail: Repatriation and Protection of Native American Remains andSacred Cultural Items, 24 Ariz. St. L.J. 79, 118 (Spring, 1992) (stating, in referring to the introductory expression of legislative intent in Arkansas Code 13-6-401 with regard to equal treatment of human burials without reference to their ethnic origins or date of burial, that: "Th[is] provision removes the problem that other states have faced when ancient burial sites have been viewed as abandoned and thus not entitled to protection under burial or cemetery desecration statutes").[12] See also, Charrier v. Bell, 496 So.2d 601
(La.Ct.App. 1986) (burial of Native American items with the dead does not constitute an abandonment and burial objects belong to Indian tribe as descendants).
The courts of some states have adopted an exception to the categories set out above for "property embedded in the soil." As stated in Ritz v.Selma United Methodist Church, 467 N.W.2d 266 (Iowa 1991):
 Property which has become part of the natural earth is not subject to the general rule of lost or mislaid property. Goddard, 86 Iowa at 85, 52
N.W. at 1125. Such property belongs to the owner of the real estate on which it is found. Id. Examples of this type of property are a meteorite, a prehistoric boat, valuable earthenware and gold-bearing quartz. 1 Am.Jur.2d, § 4 at 6; Allred v. Biegel, 240 Mo.App. 818, 820, 219 S.W.2d 665, 666 (1949); Burdick v. Chesebrough, 94 A.D. 532, 537, 88 N.Y.S. 13, 15
(1904).
Id. at 269. See also, U.S. v. Shivers, 96 F.3d 120 (5th Cir. 1996) (where federal statute was inapplicable due to insufficient age of the item found, federal common law gave U.S. Government (as landowner) ownership of metal tokens "embedded" in national park lands).
The Arkansas Supreme Court has never had occasion to address the status of "property embedded in the soil." I thus cannot opine with confidence that this concept would be applied in Arkansas, or to facts involving burial items. (See, e.g., John B. Winski, There are Skeletonsin the Closet: The Repatriation of Native American Human Remains andBurial Objects, 34 Ariz. L. Rev. 187, 204 (1992) (asserting that "common law cases agree that burial objects, if removed from the grave, belong to the person who buried the deceased, or that person's descendants" and do not fall within the doctrine of "property embedded in the soil.") Again, the issue has not been addressed in Arkansas.
As a consequence, it is impossible to apply the state common law analysis which would ordinarily be undertaken to determine ownership of the found items in question. As you indicate in your request, therefore, legislative clarification is warranted.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] This Act was adopted without a formal title, so I assume your reference to it as the "Arkansas Unmarked Burial Act" is a common name.
[2] I should note that HB1068, currently pending in the 86th General Assembly, amends various provisions of A.C.A. §§ 13-6-301 to-308. It addresses "archeological sites" including "burial grounds." This bill has not become law as of this date.
[3] "Federal land," is defined in NAGPRA as "any lands other than tribal lands which are controlled or owned by the United States. . . ."25 U.S.C. § 3001(5). See also 43 C.F.R. 10.2(f)(2).
[4] "Indian tribe" is defined in NAGPRA as "any tribe, band, nation, or other organized group or community of Indians . . . which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians."25 U.S.C. § 3001(7).
[5] Certain "alternative" procedures are authorized by the NHPA regulations. See 36 C.F.R. § 800.14.
[6] I should note, however, that one regulation adopted under the authority of NHPA, ARPA and the "Moss-Bennett Act" mentions ownership of "material remains" on private lands by stating that "`Material remains' as defined in § 79.4 of this part, that are excavated or removed from a prehistoric or historic resource generally are the property of the landowner." 36 C.F.R. § 79.3. This part of the federal regulations has been described as a "[National Park Service] regulation, applicable government-wide, that governs the `curation' of federally owned archeological material and data. . . . The regulations establish standards for curatorial facilities that house federal collections, and procedures by which federal agencies are to ensure that their collections are properly housed in such facilities." See, King,supra, at 257. Although I have found no reported cases discussing the precise impact of this regulation, legal commentators do not appear to characterize it as invariably dictating landowner ownership of grave goods found on private land. Id. Cf. also, Bonnichsen v. U.S.,217 F. Supp. 2d 1116 (D. Ore. 2000) at 1665-67 (discussing the impact of this regulation on remains removed from federal land under an ARPA permit).
[7] These subsections provide respectively that: "Artifacts as defined in this subchapter and private collections legally acquired prior to July 15, 1991, are exempted from this section" and "Nothing in this subchapter prohibits the collecting of such artifacts by landowners or others who do so with the landowner's permission."
[8] Although A.C.A. § 13-6-403(a) prohibits the selling of human skeletal burial remains and their "associated burial furniture," the applicable subchapter provides no separate definition for "associated burial furniture." It defines only "burial furniture." A.C.A. §13-6-402(2).
[9] In this regard, the "State Plan" provides that "NO ONE, not even a landowner nor someone with the landowner's permission, can purposefully dig in a grave other than for scientific purposes." A State Plan for theConservation of Archeological Resources in Arkansas, Part I,Protection Strategies for Archeologic Resources in Arkansas (Davis, Edition 1982, Rev. 1994) at PS 6.
[10] I will note, however, that separate statutes in preceding subchapters provide that all "artifacts, fossils, relics, and other personal property discovered, donated, or otherwise acquired in pursuance of th[e Arkansas Archeological Survey] shall be the property of the State of Arkansas held in trust by the University of Arkansas. A.C.A. § 13-6-213(a) (Repl. 2003). See also, A.C.A. § 13-6-214(a) ("The Arkansas Archeological Survey shall hold title to and have primary responsibility for all archeological objects and material obtained pursuant to this program or otherwise accruing to the survey.") In addition, "[a]ll information and objects deriving from state lands shall be utilized solely for scientific or public educational purposes and shall remain the property of the state." A.C.A. § 13-6-301(a)(2) (Repl. 2003) (emphasis added). I assume that your question involves the unearthing of objects on private, rather than state land, and that it may involve instances in which the discovery is not undertaken as a part of the program of the Arkansas Archeological Survey. These provisions are therefore not necessarily controlling as to the facts upon which your question is premised.
[11] Arkansas does not have a generally applicable "Lost Goods" Act, which would dictate the disposition of such property. In addition, the "Unclaimed Property Act" codified at A.C.A. §§ 18-28-201 to-230 (Repl. 2003) does not cover the type of items you describe. See A.C.A. §18-28-201(13)(A) and § 18-28-203 (Repl. 2003).
[12] In my opinion A.C.A. § 20-17-905 (Repl. 2005), which authorizes a circuit judge to order the removal of the dead from an "abandoned cemetery" in certain locations, is likely inapplicable to the facts at hand. In the absence of this or some other official process, the "general rule is that a cemetery is never abandoned . . . until the bodies reposing there are removed by friends or relatives or by proper public authority and the mere disuse or the lack of continued interments does not constitute abandonment." Bowen v. Hooker, 237 Ark. 250,372 S.W.2d 257 (1963).